### SWEARINGEN v. MOORE et al.

No. 18479. Opinion Filed March 12, 1929.

Rehearing Denied Sept. 10, 1929.

Jesse L. Ballard and Richard L. Wheatley, for plaintiff in error.

Guy Patton and William T. Rye, for defendants in error.

DIFFENDAFFER, C. The parties appear here as in the trial court. Plaintiff filed her action in the district court of Craig county to recover judgment on a promissory note in the sum of $900 dated March 6, 1916, executed by defendants to the Security Land Credit Company, a corporation, due March 1, 1926, and to foreclose a mortgage on 80 acres of land in Craig county, given to secure the payment of said note. The note and mortgage were assigned to plaintiff on the 13th day of March, 1916.

Defendants admit the execution of the note and mortgage, and that plaintiff is the owner thereof. They allege, in substance, that John V. Hellman of Galena, Ill., and Joseph V. Nack of Galena, Ill., were successively the agents and representatives of plaintiff and acted for plaintiff in the collection of all interest and principal payments made on said notes and mortgage; that plaintiff had purchased the note and mortgage with the understanding and agreement that all interest and principal payments thereon should be collected by plaintiff by and through whatever arrangements, agency, or methods and customs of business of making such collections on loans handled by them, including the note, interest coupons and mortgage sued upon; that the Security Land Credit Company was the agency and means used by them in making such collections on the note and mortgage, all of which was well known to, agreed and assented to by plaintiff.

Payment of all interest coupons down to and including the interest coupon due September 1, 1925, and also payment of $300 of the principal February 28, 1920, and $500 of the principal on February 28, 1923, to the Security Land Credit Company as agent of plaintiff was pleaded. They then alleged tender of the balance alleged to be due, viz., $100, and deposited same with the court clerk.

Plaintiff replied by general denial, and specifically denied that the Security Land Credit Company was her agent, and particularly denied that she had at any time or in any manner appointed or designated the Security Land Credit Company or any of its officers or employees as her agent, and alleged that she had at all times had and held the actual physical possession of the note and mortgage, and that no person was authorized to collect any part of the principal of said note before its maturity.

Upon the issues thus joined, the cause was tried to a jury, resulting in a verdict and judgment in favor of defendants. From this judgment, after unsuccessful motion for new trial, plaintiff brings this appeal.

There are 19 assignments of error, but plaintiff in her brief says:

"The only questions of real issue in the case were (a) whether the plaintiff, either directly or through an agent, authorized the defendants to make the payments on the principal note, and at the time such payments were attempted to be made; (b) whether or not the Security Land Credit Company had authority to receive and collect the payments attempted to be made on the principal note, and thus bind the plaintiff."

We think this true, and that the only question to be determined is whether there is any competent evidence of agency tending to support the verdict of the jury. This is substantially the only question involved. There is no question as to the payments having

been made by defendants. In fact, the record discloses canceled checks showing each payment as alleged by defendants, and the record clearly shows these payments to have been made by defendants to the Security Land Credit Company. The record further shows that plaintiff received payment in full for all interest coupons, save and except the one due March 1, 1926. The $800 paid on the principal was kept by the Security Land Credit Company. The only question then is: Of whom was the Security Land Credit Company the agent, and, if the agent of plaintiff, did it have authority to collecct any part of the principal of the note before its maturity?

Plaintiff contends that the Security Land Credit Company was the agent of defendants by reason of, and that they were bound by, a certain agency contract, hereinafter set out in part, which plaintiff claims made the credit company defendants' agent.

On March 6, 1916, defendants executed a paper designated "Loan Contract," which is in part as follows:

"Security Land Credit Company,
"Vinita, Okla.

"I hereby appoint you as my agent irrevocable to negotiate for me, either in your own name, or that of any one you may choose, a loan of $900 for a term of 10 years from March 1, 1916, said loan to draw interest at the rate of 6 per cent. per annum, payable semi-annually on the first day of September and March in each year, and to be secured by first mortgage on land herein described. Note and mortgage to be payable to anyone the lender may desire, that the principal may be payable wherever the lender may designate, and on such blanks, i. e. notes, mortgages and other forms as the lender may furnish. * * * I agree to pay you the sum of $180 as compensation for your services in negotiating this loan, for inspecting the securities offered by me for the same, for guaranteeing to the purchaser of said mortgage the truthfulness of all statements made by me in my application for said loans, for advising me relative to my title to said land, for preparing the necessary instruments to perfect the said title in me according to the opinions of your title examiner, * * * for collecting the interest and principal on said loan at maturity from anyone to whom I may sell the said security, without incurring any obligation or liability on your part, because of your failure or inability to do so; for remitting the interest and principal to the owner of said mortgage in New York Exchange and for making an annual investigation as to whether or not the taxes are paid on said land and for reporting the

same to the holder of the mortgage, the said consideration, to be paid, as follows. * * *"

There also appears in the record an undated, unsigned application for farm loan, the original of which defendants admit they signed; and which, in part, reads:

"Application for First Mortgage Farm Loan.

"I, the undersigned, Annie M. Moore, nee Coats, of Bluejacket, P. O. county of Craig, state of Oklahoma, do hereby appoint the Security Land Credit Company (a corporation) my agents to procure or make a loan for me of $900 for the term of ten years.

"Privilege is reserved to pay $100 or any multiple thereof or the whole amount at the maturity of any coupon on or after one year by giving 60 days' notice, at six per cent. per annum, interest to be paid semi-annually on the first day of September and March, principal and interest payable at such place as the lender may direct, and secured by first mortgage of approved form, on real estate hereinbefore described. * * * And I hereby constitute and appoint the Security Land Credit Company my attorneys irrevocable for and in my name, place and stead, to procure this loan from any person or persons or corporations and to forward to the holders of notes for principal and interest, the interest money as the same becomes due from time to time, and the principal whenever it may, from any cause, become due and payable, hereby ratifying and confirming all that my said attorneys may do in the premises as fully as if done myself."

On March 6, 1916, the same date of the loan contract, the note and mortgage sued upon were executed, the same being to the Security Land Credit Company. On the same day the proceeds of the loan were paid to defendants, and they signed a receipt therefor which is in part:

"No 563. Muskogee, Okla., March 6, 1916. Received of the Security Land Credit Company $900 in full payment of the balance due me on a certain real estate mortgage for $900 executed by me on the 6th day of March, 1916, and negotiated by them as my agents on 80 acres of land in Craig county, Oklahoma, as follows. * * *"

Thereafter defendants paid each coupon, as it fell due. to the Security Land Credit Company, asking it no questions, and receiving from it no information as to who was the owner of the note. The payments on the principal were made in like manner. About November, 1923, the Security Land Credit Company ceased to do business, and Joe Bashore, its vice president and secretary, took over and attended to that part of its business pertaining to this loan and others.

The coupons were for $27 each. After the payment of the $300 on the principal, when a coupon fell due, defendants paid the Security Land Credit Company $18, but the company in sending in the money to Nack would send the full $27. In like manner, after the $500 payment on the principal, defendants would pay but $3. The coupons would be returned to defendants, but the record is not clear whether any of them were delivered at the time of payment, but most of them were held by plaintiff until she received the money from her agent, Hellman or Nack, when she would forward them to her agent in Galena, Ill., who would in turn send them to the Security Land Credit Company, and they in turn would send them to defendants.

As to how plaintiff obtained the note and mortgage, the record discloses that on January 13, 1916, Hellman wrote to Gus Bashore, president of the land credit company, as follows:

"Mr. Gus Bashore, Pres't.,
  "Security Land Credit Company,
    "Vinita, Okla.
                    "No. 563 Annie M. Moore
                    "$900.00 Loan
                    "Client
                    "Mrs. Emma Swearingen.

"Dear Sir:

"A client has written relative to a $900 loan, he has this amount to invest, and as she is a very good friend I would want to obtain an extra fine loan for her, have you anything that would fill this bill?

"This client is living in Wisconsin, and as it would take quite a while to hear from you, I will try to hold this matter open until I hear from you.
                "Yours truly, John V. Hellman."

Bashore replied:

"Mr. J. V. Hellman,
  "204 So. Main St.,
    "Galena, Ill.

"Dear Mr. Hellman:

"Replying to your favor of the 13th, relative to a $900 loan. I note very carefully the contents and I have at this writing two $900 applications which we will examine this week. One of them looks like it might be a good loan. The other application does not contain complete information. If one of these materializes enough I will submit subscriptive papers at the earliest possibly moment.

"In the event that neither of the said prospects are accepted by our examiner, I will be glad to start the interest at six per cent. on your clients fund until such time when I will have a $900 loan that will meet with your approval.

"Thanking you for your offer, I am,
        "Yours very truly,
          "Security Land Credit Company.
            "Gus Bashore."

Nothing further appears until March 6th, when the papers were executed as set out above. On March 13, 1916, the assignment was executed and on the same date the land credit company wrote Hellman:

              "Vinita Okla. March. 13, 1916.
"Mr. John B. Hellman,
  "204 S. Main St.
    "Galena, Ill.
                    "Annie M. Moore Loan
                    "$900.00

"We enclose herewith descriptive papers with the following:

"Abstract & Attorney Certificate.
"Recorded Mortgage.
"Bond and Interest Coupons.
"Borrower's Receipt.
"Assignment in Blank.

"This is a very choice loan, situated in one of the most desirable farming localities of our county. The borrowers are energetic and accumulative and have a good reputation for being successful and progressive as any farmers in the county. We have a very conservative value on this security and I know it is one that will give absolute satisfaction.

"If this security meets with your approval you may remit for principal and accrued interest less your brokerage of $54. In the event you cannot use this security, kindly send it to Robinsons Catlin & Mulford, Third National Bank Bldg., Rockford, Ill.
          "Yours very truly,
            "Security Land Credit Co.,
              "Gus Bashore."

From this it would appear that the assignment was executed in blank. The assignment, with name of Mrs. Emma J. Swearingen contained therein as assignee, was filed for record in the office of the county clerk of Craig county on April 10, 1916.

July 17, 1916, Hellman wrote plaintiff as follows:

                    "July 17, 1916.
"Mrs. Emma J. Swearingen,
  "Plattsville, Wis.

"Dear Madam:

"Enclosed please find the following papers in the Annie M. Moore loan:
"Mortgage.
"Recorded Assignment.
"Note with 20 coupons attached.
                    "Respectfully,
                      "John V. Hellman."

Plaintiff replied thereto as follows:

"Plattsville, Wis. July 19, 1916.
"Mr. J. V. Hellman,
"Galena, Ill.

"Dear Sir:

"The papers completing the Annie M. Moore loan of $900 was duly received.
"Respectfully,
"Mrs. Emma J. Swearingen."

Gus Bashore was a witness for defendant, and testified in part:

"A. In selling Hellman farm mortgages it was necessary to enter into an agreement with him as to how the business in Oklahoma should be loaned, the method employed and the procedure. You had to meet competition in the sale of your paper. We had to meet competition in the selling of this paper and other paper to Mr. Hellman, a broker in the East, he has his duties to perform in the way of finding purchasers for your paper and he attends to that. You don't appear in any of these negotiations or follow up by any acquaintanceship that you may make with any of their clientele. They safeguard that themselves and control it themselves. Then in Oklahoma they confer with the negotiating office that does only a peanut business and they stay off your clients down here. In other words when they make a loan they do not run around to the borrower and find how much interest they pay on the loan so that they might make a loan direct and save the commission. Each one of us creates his clientele and that is the understanding, that the broker in the East takes care of his part of it, of his clientele, without any interference from us and we try to protect our business down here. There is no loan company except some fraud who would take that advantage that will interfere with you in your operations with him. The agreement with Mr. Hellman on this particular paper and all paper sold to Mr. Hellman from the time I sold the first mortgage to him until to the last mortgage I sold to him, and which covers operations from the first day I organized the Security Land Credit Company, and included that period of operation until I closed out. In every instance the Security Land Credit Company was to collect the interest and was to collect the principal. Collect partial payments, see that the taxes were paid, see that the insurance was kept up on the buildings and practically to watch that loan or watch the land during the life of the loan down here just the same as if I owned it."

The deposition of John V. Hellman was taken by plaintiff, but at the trial defendants introduced a portion thereof. He testified that he had known plaintiff for about 15 years; that plaintiff wrote him that she had $900 to invest and wanted him to get her a good loan; that as a result thereof, the letters above referred to were written and the loan finally obtained as indicated in the letters; that he purchased the note and mortgage from the Security Land Credit Company for plaintiff; that he had bought about a half dozen others for other persons. When asked who, in Oklahoma, looked after the collection of interest and principal on loans that he had purchased from the Security Land Credit Company, including the Annie M. Moore note and mortgage, he answered: "The Security Land Credit Company collected the interest and forwarded it." And when pressed as to the principal, he answered that the company also collected both interest and principal. He testified that he turned the business over to Mr. Joseph N. Nack about 1918.

Mr. Nack, who is an attorney, also testified by deposition that he had been representing plaintiff in the collection of the interest on her farm mortgages since about 1918. He testified in part:

"Q. Who in Oklahoma looked after the collection of the principal, interest and taxes on the Annie M. Moore loan? A. I have no knowledge of anything in connection with this loan except the interest. Q. Please answer the question Mr. Nack: Who in Oklahoma looked after the collection of the principal, interest and taxes on the Annie M. Moore loan? A. The Security Land Credit Company of Vinita, Okla."

On October 7, 1924, on complaint of defendant Annie M. Moore, the county attorney of Craig county filed a complaint against Gus Bashore in which he was charged with embezzlement of the $500 paid by Annie M. Moore to apply on the principal of the note.

November 15, 1924, Clay M. Roper, county attorney of Craig county, wrote Mr. Joseph N. Nack, as follows:

"November 15, 1924.
"Mr. Joseph N. Nack,
"Galena, Ill.

"Dear Sir:

"We are prosecuting one Gus Bashore on a charge of embezzlement in connection with a loan made as the Security Land Credit Company, a Corp., with Gus Bashore as sole owner.

"The loan in question is one made to Annie M. Moore and it seems that you represent the investor. I understand that he will use as a defense that he was the agent of the investor and I want her here to rebut that evidence if it is untrue.

"That is my object in having her here. The case has been set for trial November 24, 1924, and as far as I know at this time it will be for trial. I would like for you to get in touch with her and find out if she will appear and testify. That is, testify that she did not have him employed as her agent. If she will and we try the case, I will immediately mail her a subpoena and wire her at the same time for her appearance here. Please wire me at my expense of her position in the matter.

"Sincerely,

"Clay M. Roper, County Attorney."

This letter was apparently referred to plaintiff, and on November 19, 1924, she wrote the county attorney, as follows:

"November 19, 1924.

"Mr. Clay M. Roper,
"County Attorney,
"Vinita, Okla.

"Dear Sir:

"This is to inform you that Mr. Joseph N. Nack of Galena, Ill., has for several years, and still continues to have the only legal authority to handle the Annie M. Moore loan for me.

"Sincerely,

"Mrs. Emma J. Swearingen.
"St. Louis, Mo.
"5305 Blvd."

We first consider the proposition of plaintiff that defendants are bound by the agency agreement. In Bell et al. v. Riggs et ux., 34 Okla. 834, 127 Pac. 427, arrangements very similar to the one here were under consideration. There Scott E. Winne was the active member of the partnership of Winne & Winne. Riggs and wife made application to the Winne Mortgage Company for a loan and the application contained the statement that Winne & Winne were appointed as their agents to obtain the loan. Riggs and wife signed a separate instrument (similar to the loan contract here) to the same effect. There the appointment of agent was to procure a loan. Here it was to "procure or make a loan." In that case, this court in discussing the effect of these two instruments said:

"Scott E. Winne was the manager of both the Winne Mortgage Company and Winne & Winne. How can it be said that he can be the agent of the borrower to borrow moneys from the company of which he was the managing agent? Will the law countenance a contract by which John Doe, the cashier of a bank, goes out and makes a contract with a borrower to act as broker in getting a loan from the bank? If, after he has made such a contract, he goes back behind the counter and credits himself as such broker with the amount of the loan, will the law say that the borrower has received the money? That is nearly the same as this case. The only difference is that Scott E. Winne appears to have had a partner on the brokerage side of the counter, though a very silent partner. It should not require argument or authority to show that Winne & Winne were practicing a species of financial juggling. There is high authority for the proposition that no man can serve two masters. * * * Scott E. Winne was the manager of the Winne Mortgage Company. That company dealt and made contracts through him as its manager. He also transacted the business of the Winne Mortgage Company. The essence of the so-called agency contract was that Scott E. Winne was employed to obtain a loan from himself. The law does not countenance such nonsense, no matter how it may be hedged about with formalities or dignified with names."

Here not only was it the essence of the so called agency contract that the Security Land Credit Company was employed to obtain a loan from itself, but the facts show that the company did in fact make the loan and pay the proceeds thereof to defendants. The rule announced in Bell et al. v. Riggs et ux., supra, has been approved by this court in Union Central Life Ins. Co. v. Pappen et al., 36 Okla. 344, 128 Pac. 716; In Hibbard v. Ford et al., 55 Okla. 563, 155 Pac. 510. In Holmes et al. v. Holstead et al., 76 Okla. 31, 183 Pac. 969, it was held:

"Agency, when made an issue, is a question of fact to be determined in proper cases by the jury, from all the facts and circumstances in evidence."

The Security Land Credit Company was clearly not the agent of the borrowers in the instant case in the matter of procuring the loan.

It is admitted by plaintiff that Hellman and Nack were her agents, but it is insisted that they were without authority to appoint or designate the Security Land Credit Company as subagents, so as to empower it to collect either interest or principal for plaintiff. Gaar Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161; Peoples Bank v. Frick Co. et al., 13 Okla. 179, 73 Pac. 949, and Ely Walker Dry Goods Co. v. Smith et al., 69 Okla. 261. 160 Pac. 898, are relied upon on this point. These cases hold in accordance with the general rule, as stated in 2 C. J. 685. that an agent in whom is reposed trust and confidence, or who is required to exercise discretion or judgment may not entrust the performance of his duties to another, without the consent of his principal. It is clear that subagents may be appointed

when their appointment has been expressly authorized by the principal, 2 C. J. 687. But express authority to appoint subagents is not always necessary. Such authority is usually to be implied when the agency from its very nature is such as to make the appointment of subagents necessary and proper. In such cases the employment of subagents is presumed to have been contemplated when the power was given, and the agent has implied authority to appoint such subagents within the limits of the necessity of the case. 2 C. J. 688. And again at page 690, it is said:

"Every man is supposed to contract with reference to the custom and usage of the business in which he engages. Hence where it is the usual custom of a trade or business to employ subagents, the principal, in the absence of proof to the contrary, is presumed to consent that agents appointed by him shall appoint subagents within the limits of such custom."

This case is brought within the latter rule by the evidence of Gus Bashore, who testified fully as to the custom and usage of the business. By the very nature of the transaction, plaintiff knew when Hellman sent her the note and mortgage that the land covered by the mortgage was in Oklahoma. She had known Hellman for some 15 years and knew the business in which he was engaged, and knew that his place of business was in Illinois. She also knew that Nack, who afterwards became her agent and looked after her real estate loan, lived in Illinois. She must have known that neither of these agents could in person come to Oklahoma and attend to the collection of her notes and mortgages; she knew that it would be necessary for them, Hellman and Nack, to designate some one in Oklahoma to collect interest and principal, see that the taxes were paid, see that insurance was kept up on the buildings, and as the witness stated it, to "watch that loan, or watch the loan down here just the same as if I owned it,"

We conclude that there was ample evidence to submit the question of the agency and implied authority of the agent to the jury. In Reed et al. v. Robinson, 83 Okla. 68, 200 Pac. 773, it is held:

"The question of agency, when made an issue in a case, is a question of fact to be determined in law actions by the jury, and in equity actions by the court, from all the facts and circumstances connected with the transaction, and, like any other question of fact, may be proved by circumstantial evidence."

This being sufficient upon which to submit the question of agency to the jury, we deem it unnecessary to further review the evidence as to the extent of the authority of the agent. The testimony of Gus and Joe Bashore and of John V. Hellman and Joseph N. Nack is clearly sufficient to support the verdict of the jury.

We have carefully examined the authorities cited by plaintiff, viz., Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148, and Weyl v. Smith et al. (erroneously cited in brief of plaintiff as Bales v. Wright et al.) 122 Okla. 216, 253 Pac. 982, and conclude that neither of those cases supports the contention of plaintiff. In the former, the facts are entirely different from the facts in the instant case, and in the latter it was held:

"Payment of a negotiable note, secured by a mortgage, by the mortgagor, when made to the mortgagee not in possession of the note and mortgage, is not binding upon the assignee thereof before maturity, who has possession of the papers at the time of payment unless he had expressly or impliedly authorized such payment."

The same rule is announced in Drew v. Anderson Clayton & Co., 120 Okla. 250, 252 Pac. 64. Both of these cases recognize the rule that authority of one to collect a negotiable note for another, though not in the possession thereof may be either express or implied.

The judgment should be affirmed.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.