**SHERRILL Trustee, v. COLE et al.**

No. 19379. Opinion Filed June 3, 1930.

Rehearing Denied Sept. 16, 1930.

Commissioners' Opinion, Division No. 2.

Keller & Cameron and McQueen & Kidd, for plaintiff in error.

Wilkins & Wilkins and Ledbetter & Brown, for defendants in error.

HALL, C. This was an action by Ida M. H. Sherrill, trustee of the estate of Stephen H. Sherrill, deceased, against Pearlie and Martin Cole, husband and wife, W. H. Pittman and others, to foreclose a real estate mortgage, and for a money judgment aga nst the Coles. The pivotal facts in the case are as follows:

1. In 1916, Pearlie and Martin Cole executed a note for $1,200 payable to the Conservative Loan Company of Shawnee. The note matured in April, 1923. The note was secured by a real estate mortgage. A series of coupon notes for the interest on this $1,-200 was executed by the makers of the note. A short time after the execution of the note and mortgage, the note was sold and assigned by the Conservative Loan Company to Stephen H. Sherrill, plaintiff's testator. Shortly afterward, the mortgaged premises were conveyed to W. H. Pittman, the principal defendant in this action. He assumed and agreed to pay the mortgage indebtedness.

2. The note and each interest coupon expressly designated the office of the payee, the Conservative Loan Company in Shawnee, Okla., as the place of payment. The mortgage also provided that the mortgagors "will pay said principal and interest at the time when same shall fall due and at the place and in the manner provided in said note."

3. The Conservative Loan Company was later reorganized as the Conservative Loan & Trust Company, which in all respects was

the successor of the Conservative Loan Company.

4. During the time defendant W. H. Pittman owned the mortgaged premises during the term of the mortgage, and before it became due and payable, he paid six annual interest coupon notes on this note and mortgage, each of which was paid by Pittman and collected by Stephen H. Sherrill, plaintiff's testator, at and through the office of the Conservative Loan Company or its successor. When these interest coupons were paid by defendant, this loan company receipted therefor, and later forwarded the interest coupon note to the defendant. The defendant understood that these interest coupon notes were somewhere in the "East," either at the company's eastern office or held by some investor there. Doubtless the same presumption obtained as to the principal note. The interest coupon notes bore the indorsement of the assignee.

5. The assignee of the note and mortgage did not record the assignment of the mortgage; and the identity of the holders of the paper was never disclosed to the payers, throughout the six years during which the Conservative Loan Company and its successor collected the interest coupons and later the principal.

6. On the first day of April, 1923, the principal note matured, and after demand by this loan company for its payment, the defendant Pittman, on the 3rd day of April, 1923, remitted a draft for $1,224 payable to the Conservative Loan Company at Shawnee and for the payment of the principal note.

7. The note was not sent to defendant in the usual course of time, and, in fact, it was never sent to him. Sometime thereafter, approximately one year, the Conservative Loan & Trust Company failed financially, and was declared insolvent; and on the 29th of August, 1924, this action was instituted against the defendant and other persons to foreclose the said mortgage.

8. This loan company failed to remit the proceeds of this note which it had collected from the defendant; but, to use a mild term, it appropriated the money to its own use. At the time this note was purchased by Stephen H. Sherrill, he had already purchased a large number of other notes and mortgages from this same company. This loan company had an eastern office located in Bridgeport, Conn., known as the "G. M. Christner Company,"—Christner, to a considerable extent, being the Conservative Loan & Trust Company of Shawnee, Okla.

9. Plaintiff, or plaintiff's testator, received all payments of interest on this loan through this loan company at Shawnee, and its Bridgeport (Conn.) office.

10. Along with the assignment of the note and mortgage, the loan company executed to Sherrill, the assignee, an instrument styled "a guarantee certificate," or "guarantee of title," an agreement rather broad and comprehensive in its scope. This instrument was formally executed by the Conservative Loan Company. Among its many provisions, the essential ones for the purposes of this case were:

'That no loss shall occur by reason of the nonpayment of taxes or other liens.

**"That we shall attend to the collection of principal and interest** free of charge and remit therefor **as soon as collected.**

"That we will watch over and **look after the** loan until it shall have been fully paid."

At the trial, the defense interposed was, that the Conservative Loan & Trust Company, and its predecessor, the Conservative Loan Company, was the agent of the investor, plaintiff's testator, and that the defendant, in paying the principal note to the Conservative Loan & Trust Company, paid it to the agent of the plaintiff, and he was bound thereby; and that it was not any concern of the defendant if plaintiff's agent converted the proceeds of the note to its own use and benefit. A jury was waived after being impaneled, and the court found and determined all issues in favor of the defendant and rendered judgment accordingly. The plaintiff appealed.

Counsel for appellant, in urging error of the trial court, rely upon three cases from this court, involving propositions and facts somewhat similar to the present case; and also rely upon an instrument styled a "farm loan application" and executed by Pearlie and Martin Cole at the time they made application for his loan. This loan was obtained and the money was borrowed from the Conservative Loan Company. Notwithstanding that this company was the lender of the money to the applicants, this instrument recited that the Conservative Loan Company was the "agent" of the applicants. This matter will be more fully discussed later in this opinion.

Counsel for plaintiff in error, with commendable frankness, stated in the course of the oral argument of this case, that the result or conclusion reached would depend upon which line of cases we should adhere to

in deciding the matter before us. They urge and rely upon the doctrine applied in the cases of Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148; Weyl v. Smith, 122 Okla. 216, 253 Pac. 982; and Winnebago State Bank v. Hall, 127 Okla. 215, 260 Pac. 497. It is practically conceded by counsel for plaintiff in error that, if we follow the other line of cases by this court, some rendered prior and some subsequent to the above cases, the judgment will necessarily be affirmed.

It is conceded that the case of Chase v. Commerce Trust Co. and Winnebago State Bank v. Hall furnish the position of plaintiff in error some anchorage. The case of Winnebago State Bank v. Hall, ever since its announcement, has been seized upon like a pursued man seizes upon a defensive weapon. The case had scarcely appeared in print before it returned here through the channels of supplemental briefs and by way of oral argument, where it has been urged with much seriousness in every case involving the subject-matter involved therein. The case, however, is just one of a large number of adjudications on the same subject-matter, and it must be read and considered in the light of these other cases.

Ordinarily, one bound to pay a negotiable promissory note is not protected if he pay it to the payee thereof, and at the place of payment named in the note, without the production of the paper by the person receiving the money. That general rule is universally conceded; but it must be remembered that to this rule are exceptions.

First, there is an exception where the person who receives the payment is the agent of the holder of the instrument. In this connection, all our decisions are to the effect that this agency may be express or implied. Second, there may be such a course of dealing or course of conduct between the holder of the negotiable note and the person to whom payment is made, that the payer is justly led to believe that the person receiving payment was authorized to do so by the rightful holder of the instrument. We think both of the exceptions are present in the case at bar.

The facts in the present case bring it clearly within the rules announced and conclusions reached in the cases of Springer v. Cobb, 132 Okla. 11, 269 Pac. 1111; International Life Insurance Co. v. Bradley, 114 Okla. 231, 246 Pac. 222; Tate v. Baugh, 125 Okla. 166, 256 Pac. 890; State National Bank v. Bates, 128 Okla. 141, 261 Pac. 921; Dauel v. Rose, 123 Okla. 51, 251 Pac. 1000; and the more recent cases of Swearingen v. Moore, 138 Okla. 24, 280 Pac. 295; and Catlin v. Reed, 141 Okla. 14, 283 Pac. 549. Some of the cases from other states directly in point are Security State Bank v. Soale (Mont.) 225 Pac. 127; First National Bank v. Hessell (Wash.) 234 Pac. 662; and Easton v. Littooy (Wash.) 158 Pac. 531.

We do not mean to indicate that the provision in the note and mortgage providing the place of payment of the note to be at the office of the payee at Shawnee was controlling as against the holder of the note. As we have already stated, that alone would have had no probative force toward proving agency. But that fact, together with other evidence, such as the conduct of the assignee for a long period of time evincing a purpose to make and use the payee as collector, was an element to be considered in determining the question of apparent authority of the Conservative Loan & Trust Company to receive payment of this note. The place of payment and its recognition for several years were links in the chain of circumstances under which the payment was made, to determine if the holder of the note should be estopped from denying that the loan company was agent of the holder for the purpose of receiving this payment.

In this connection, this court, in the recent case of Springer v. Cobb, supra, quoted with approval the syllabus in the case of International Life Ins. Co. v. Bradley, supra. There is such an analogy between the present case and the case of Springer v. Cobb, that we deem it appropriate to quote briefly from that opinion:

"Under the facts in this case, we think it is controlled by the rule announced in the case of International Life Insurance Co. v. Bradley, 114 Okla. 231, 246 Pac. 22, wherein this court said: 'When a note is sold, and the farm mortgage securing same is assigned by the payee to a third party, which mortgage recites that the principal and interest are payable at the office of the payee, and the assignee collects the interest continuously for a period of five years through the payee, receiving its checks therefor, sending the maturing coupons to the payee to be delivered to the mortgagor, and carries on all negotiations as to insurance and taxes through the payee, and this is shown to be the method or course of dealing between the assignee and the payee as to a large number of other loans so assigned by the same payee, and in one or more instances part of the principal on a similar loan was collected, placed on books of payee to credit of assignee, and there allowed to remain for more than a year to the assignee's knowledge, such evidence of the course of dealing

is sufficient to sustain a verdict that the payee was the authorized or ostensible agent of the assignee to receive a partial payment of the principal.'

"The Conservative Loan Company was the payee in the note and mortgage, and no assignment of the mortgage was ever placed of record by the plaintiff until after the note was paid by the defendants and the loan company was adjudged insolvent and a receiver appointed. All of her dealings were with the loan company."

We readily agree with counsel for plaintiff in error that the mere payment of the note after maturity did not change the legal effect of the transaction. Under the Negotiable Instruments Law, the determining factor is the negotiability of the instrument and not that it was paid before or after maturity. In this connection, section 7758, Comp. Stat. 1921, provides as follows:

"Payment is made in due course when it is made at or after the maturity of the instrument to the holder thereof in good faith and without notice that his title is defective."

However, in some cases, the fact that payment is made after maturity may be a circumstance to be considered with other evidence on the question of implied agency to receive payment. For example, in the present case defendant paid the note practically at maturity, or three days after it was due; but the holder of the note never notified the defendant that the money had not been received until he filed suit thereon. Undoubtedly, this is some evidence, though it may be slight, that the matter, to a very considerable extent, was entrusted to the loan company, and that this loan company was plaintiff's agent for the purpose of receiving payment of both principal and interest.

In connection with the effect of the instrument styled "guarantee of title," which instrument accompanied the note and mortgage when it was assigned to the investor, this court has held in several cases that such instrument, when accepted in its legal sense by the investor or assignee, establishes an agency between the loan company or payee of the notes and the person to whom they are assigned. In the case of Dauel v. Rose, in which case the facts of agency depended upon this "guarantee of title" agreement, and the fact that the mortgagor had remitted to the investor four interest installments on the note, this court held that "this evidence on behalf of defendants was sufficient to sustain the burden of proving that the Conservative Loan Company was the duly authorized agent of plaintiff to receive

payment of said note and interest." It was further said:

"The instrument, taken at its face value, creates such agency and plaintiff seems to have accepted the benefits of the agency by accepting services of the loan company in collection and remitting to him certain installments of interest. The execution and delivery of this document to plaintiff is not disputed—but only its legal effect. It is elementary in such case that agency is a question of law for the court, the facts not being controverted. It follows that the court did not err in directing verdict and rendering judgment for defendants."

In Tate v. Baugh, this court held that this guarantee agreement executed to the investor by the loan company was sufficient within itself to create an agency as to bind the investor or holder of the note when payment was made to the payee in the note, which was the Conservative Loan Company. To the same effect is State National Bank v. Bates, supra.

Other cases in point, generally, are Walker v. Beveridge, 107 Okla. 147, 231 Pac. 217; Dandois v. Raines, 115 Okla. 88, 241 Pac. 1099; Brouse v. Cox, 129 Okla. 130, 263 Pac. 1088; Jilson v. Dickinson-Reed-Randerson Co., 125 Okla. 276, 257 Pac. 759.

In regard to the other point presented, the purported agency agreement involved in the application for a loan, it is sufficient to say that this question was given extended consideration by this court in the early cases of Bell v. Riggs, 34 Okla. 834, 127 Pac. 427, and Union Central Life Insurance Co. v. Pappan, 36 Okla. 344, 128 Pac. 716. This identical question was discussed at length in those cases, especially in the latter case, in which the learned Commissioner Rosser, in terse and convincing language, displayed the ridiculous nature of the contention that a person with whom one is dealing can contract away legal liability under the guise that he is an agent of the person with whom he is dealing adversely. A passage from the opinion in the case of Bell v. Riggs, supra, pertaining to the exact question before us, to wit, an application for a farm loan whereby the lender is purported to be made the agent of the borrower, is in the following language:

"We have no doubt that in any case of contract between parties, it is not only within the province of the court, but clearly its duty, to go behind the technical wording of the instrument, and from the entire evidence in the case determine as a matter of fact and law the question of agency. Can the parties to a contract irrevocably fix the

status of a third party in his relation to them by denominating him an agent for one of them, if the facts and circumstances disclosed in the record unmistakably show that such named relation was a fiction—was untrue, in fact? If they can say, then courts are powerless to determine and give effect to the actual contracts of parties, and, in effect, the courts would be bound by a mere form, while the substance, the reality, would be subordinated to that which was, in fact, unreal and untrue. The mere use of the word 'agent,' as thus applied by parties in their contract, cannot be held to have the effect to make one an agent who, in view of the law under the evidence, is not such. A legal relation of one to another is not the fruit of a name, but is to be determined from all of the evidence in the case. Merely calling one an agent for one party, even in a contract, does not of necessity make him such. The question is, in view of all the facts disclosed in the record, what relation, under the law, did Coleman sustain to those parties? * * * "

"As is well said in Insurance Co. v. Ives, 56 Ill. 420. 'There is no magic power residing in the words of the stipulation to transmit the real into the unreal. A device of mere words cannot, in a case like this, be imposed upon the view of a court of justice in place of an actuality of fact, and make the company and its agents the agents of the appellee'."

To this rule, there is no contrary authority, not even one case; and the cases supporting it are so numerous as to be bewildering. This doctrine set forth in Bell v. Riggs, and Union Central Life Insurance Co. v. Pappan, was reapproved by this court in the recent case of Swearingen v. Moore, supra, in carefully prepared opinion by Commissioner Diffendaffer.

Finding no material error in the proceedings, the judgment of the trial court is hereby affirmed.

BENNETT, HERR, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

ANDREWS, J., dissents.

By the Court: It is so ordered.