## HOFFMAN BROS., Jr., et al. v. FIRST NAT. BANK of QUAPAW.

No. 20220. Opinion Filed Sept. 13, 1932.

Vern E. Thompson and Moody R. Tidwell, Jr., for plaintiffs in error.

Frank Nesbitt and Perry Porter, for defendant in error.

SWINDALL, J. This action was instituted in the trial court to recover judgment for two installments of $104.25 each on a promissory note executed by the defendants to the Picher Motor Company and sold and indorsed to the plaintiff a few days after its execution, and for the foreclosure of a chattel mortgage securing the note. The defendants admitted owing the final installment on the note and alleged a tender of that, and the case turned upon whether or not the other installment had been paid, and that issue turned upon whether or not the Picher Motor Company was the agent of the plaintiff when it was paid to it.

The trial judge instructed the jury that there was no evidence of agency, and the jury returned a verdict for both installments and the judgment followed the verdict. The defendants complain of the instruction as erroneous.

In their answer the defendants alleged an actual agency, and further alleged that with the exception of a few installments which they had paid to a Mr. Pratt after he had informed them that he was the agent of the plaintiff who held the note and to make payment to him, all of the installments which they had paid had been paid to the Picher Motor Company without knowledge that it did not have possession of the note and in the belief that it was authorized to accept payment, and that this course of conduct was not repudiated by the plaintiff and they were not notified to pay in any other manner until they received the notice from Mr. Pratt to pay to him. All of the installments paid to Mr. Pratt were credited upon the note, so that the issue was as to whether one installment paid to the Picher Motor Company was properly paid, the jury by their verdict evidently having found that it never was paid over to the plaintiff, and having been forced by the instructions to return a verdict in favor of the plaintiff upon the issue of payment upon finding that the installment did not reach the plaintiff.

It appears that the plaintiff bought most of the notes that were taken by the Picher Motor Company upon sales of automobiles. The plaintiff's cashier testified that while some of the makers made payment to the bank, most of the payments upon the notes were obtained by means of drafts which the plaintiff drew upon the motor company after installments had become delinquent in not having been paid to the bank. This was also the testimony of the bookkeeper of the motor company. These drafts seem to have been drawn once or twice a month, and upon the draft it was noted what installments were represented by the amount of the draft. The motor company had been adjudged bankrupt before the trial and some of its records had been destroyed, among them being the envelopes upon which were kept the record of payments, but the bookkeeper testified that the defendants had paid the installments due upon their note each month up to the time that Mr. Pratt took charge of collections. The cashier testified that it was not agreed that the motor company would make collections upon the notes, and he insisted that the drafts which were drawn were drawn upon the motor company as indorser of the notes. The evidence shows that in one month two drafts were drawn which aggregated more than $5,500. It did not appear that the defendants knew what method of payment was being pursued by others, and none of the defendants testified as to being misled or as to what they thought or understood when making the payments.

It seems clear that the evidence negatives express authority to the motor company to make collections as the agent of the plaintiff, and the agency, if the jury could find that there was an agency, would be an agency by implication from course of conduct, which necessitates considering what inferences could reasonably be drawn by the jury from the evidence outlined, supplemented by the fact that there was no evidence that the plaintiff ever notified any of the makers of its acquisition of the notes or ever objected to the course of conduct in making payment to the motor company.

It may be conceded that one acquiring negotiable paper in due course is under no duty to notify the maker to avoid danger of a payment later made to the original payee not still in possession of the paper in ignorance of the transfer being held a valid payment, and that a contrary rule

would unduly burden the quality of negotiability. It may be further conceded that if a holder puts an agent in possession of the paper as a method of conferring upon him authority to collect, since when he receives the collections he has no notice that payments have been made in any but a proper manner, upon production of the paper as evidence of authority, withdrawing the paper from the possession of the agent is sufficient to terminate the agency. But here we are concerned with a course of conduct apart from possession of the paper, so that such rules of law are not determinative of the problem. While a holder is under no duty to notify a maker not to pay one not in possession of the paper if the situation is not complicated by other circumstances, yet when there are other circumstances present that indicate an agency, the failure to notify the makers of the acquisition of the paper becomes evidentiary upon the issue of agency. So, likewise, does an acceptance of the benefits of payments with a failure to repudiate the assumption of authority to accept them. Of course, if payments are received through one who was a stranger to the paper, it would be fair to assume that the stranger was making payment as agent of the maker, but if one acting as agent of a lender in the making of a loan, while not authorized by that fact to collect the paper, makes collections to the knowledge of the holder, it will not be assumed that he is not acting for the lender, and acceptance of such benefits without repudiation, in spite of the fact that the owner is also endeavoring to make collections, where there are stray instances of such assumption of authority, will at least estop the holder in favor of one who acted with knowledge of the instances and in reliance upon an appearance of authority, and if the course of conduct indicates a practice of so acting, a jury would be authorized in finding an actual agency created by implication, even in the absence of an express delegation of authority. And, just as an agent acting in the making of a loan cannot be said to be a stranger to the paper in the above sense, a payee who has negotiated the paper cannot be said to be a stranger to the paper. When we consider what inferences a jury might draw from the evidence in this case, we should give to conduct the significance which it would seem to have according to the common and usual understanding of ordinary persons acting under like circumstances. It would seem fair to assume that people usually pay to those whom they consider authorized to accept payment. And when we take into consideration the fact that although the town of Picher was only a few miles from the location of the plaintiff's bank, that the notes were executed for automobiles which in themselves furnish a mode of transportation, and that in spite of these facts, while some makers paid directly to the bank, most of the payments were received by the bank by means of these drafts which the cashier claims were drawn upon the motor company as indorser, a jury could infer that many makers paid to the motor company in the belief that it still held the notes or was authorized to accept payments upon them, and it would be authorized to infer that this was known to the bank, and that it was approved and ratified by the bank time and again by failure to repudiate the assumption of authority. The cashier testified in one place that he did not know that the motor company was making collections upon the notes, but in another place he said that he did not know that the motor company was making any certain collections upon any certain notes, and while this deviation in expression was due to a difference in the form of the questions, the jury were clearly authorized to infer that this latter mode of expression was the correct statement rather than a denial of knowledge that the motor company was making collections. There was no evidence of any such stringency in the neighborhood as would indicate that the normal situation did not exist, payment of most of the installments upon most of the notes at maturity. We have no difficulty in concluding that it was fairly within the province of the jury to infer that although there was no express delegation of authority given to the motor company to make collections, there was a tacit understanding that it would do so, either at the beginning or at least growing out of the course of conduct pursued in the making of the collections, the evidence fairly justifying an inference that the plaintiff knew that the motor company was making a practice of making collections each month and that it desired this practice to go on, there being a lack of evidence of notice given to the makers that the plaintiff had acquired the notes or that it desired payment to be made in any manner other than that in which it was being made, through the motor company. So far as payments made by the defendants up to the time that Mr. Pratt took charge of collections are concerned, it does not appear that they knew what other makers were doing, and all that can be seen is that the defendants made payment after payment to the motor company.

So far as the drafts are concerned, it appears that they were drawn only once or twice a month, so that it does not appear that even at maturity of the respective installments any efforts were made by the holder to collect them from the makers of the notes, but that it waited until numerous installments were delinquent in not having been received by it and then drew a draft for all then so apparently delinquent. It may be conceded that the plaintiff had the right to draw upon the motor company as indorser, but it would not follow that the drafts would be paid by money of the motor company, for it might be paid by proceeds of collections made by it and the difference made up out of its own funds. We have to do with more than the fact that the drafts were drawn upon the motor company and that the plaintiff had the right to draw upon the indorser. We have to do with the effect of all of these circumstances as justifying the inference that the motor company had authority by implication to make collections upon behalf of the plaintiff, and the fact that it waited until some days after maturity of many of the installments, no steps appearing to have been taken to collect from the makers, would, in connection with the other circumstances, justify an inference that the plaintiff not only knew that collections were being made, but that it expected and desired that they be made, by the motor company, and that it preferred to be rid of the trouble of making collections by its own efforts.

In this case the course of conduct was unlike that oftentimes appearing, in that it had to with the very authority claimed to exist, the claim being that from repeated collections of principal an inference of authority to do that very thing should be drawn, whereas in many cases the course of conduct is weaker in that it has to do with a different authority, as where the course of conduct as to collections consists of repeated collections of interest merely, and from that and other circumstances it is claimed that it should be inferred that there was authority to collect principal.

An examination of the cases not only indicates that an agency to collect payments upon negotiable notes may not only be express, but that it is not required to be an express delegation of authority, but may exist by implication from a course of conduct. Not only may an express authority be proven by circumstantial evidence justifying such an inference, but where the authority is implied it may be likewise proven by circumstances, indeed, depends upon circumstances, a course of conduct oftentimes,

from which the fair inference is that the conduct operated to confer the authority in the absence of express agreement. It is also true that in the absence of actual authority, express or implied, one can so act as to hold another out as his agent so that he is estopped to deny the authority against one acting in reliance upon it. Manifestly less in the way of a course of conduct is necessary to create an estoppel than to create an actual agency, and to create the estoppel it is necessary that reliance be had upon the conduct, whereas in the case of an actual agency existing by implication, since the authority is actual, reliance or knowledge is immaterial. But as the course of conduct becomes more general the more and more there is presented a case indicating actual authority, and while many of the cases indicate that a course of conduct permits reliance upon it, in many of them the course of conduct would clearly justify an inference of actual authority, and in many of them the only reliance that can be found is what may be gathered from the mere fact that the defendant makes successive payments to the alleged agent, it not appearing that he knew of a course of conduct as to the notes of others, and there being no evidence of reliance other than what might be gathered merely from the fact of repeated payments made by the defendant to the alleged agent. As a matter of fact this shading from cases of estoppel to cases of actual agency by implication is recognized by Mechem, and it is significant that he treats many of the cases, in spite of the fact that they contain expressions as to reliance, as cases of actual agency by implication where a general course of conduct shows exercise of the authority in question, because he cites as instances of cases where there was an actual agency by implication the following cases: Quinn v. Dresbach, 75 Cal. 159, 7 Am. St. Rep. 138; Frost v. Fisher, 13 Colo. App. 322; Morgan v. Neal, 7 Idaho, 629, 97 Am. St. Rep. 264; Townsend v. Studer, 109 Iowa, 103; Harrison v. Legore, 109 Iowa, 618; Shane v. Palmer, 43 Kan. 481; Meserve v. Hansford, 59 Kan. 777; Fowle v. Outcalt, 64 Kan. 352; Doyle v. Corey, 170 Mass. 337; Wilson v. La Tour, 108 Mich. 547; Ziegan v. Stricker, 110 Mich. 282; Bissell v. Dowling, 117 Mich 646; Johnston v. Milwaukee & Wyoming Inv. Co., 46 Neb. 480; and numerous other cases. All these cases are cited by him after citing the case of General Convention v. Torkelson, 73 Minn. 401, in which, after stating the facts having to do with the question of agency, he calls attention to the fact that "there was nothing to indicate that he knew of or relied upon

the foregoing facts." Following this and preceding the citation of the above cases, he said: "Substantially similar are Quinn v. Dresbach" (and the other cases cited, supra). Mechem on Agency (2d Ed.) sec. 938, "Authority by conduct independent of possession." Vol. I, pp. 673, 674. It is not until the following section, 939, that Mechem considers the question of "estoppel to deny authority."

The same situation is presented by our decisions upon the questions: Ohio National Life Ins. Co. v. Dobbs, 140 Okla. 147, 282 P. 306; Dandois v. Raines, 115 Okla. 88, 241 P. 1099; Swearingen v. Moore, 138 Okla. 24, 280 P. 295; Tate v. Baugh, 125 Okla. 166, 256 P. 890; Sherrill v. Cole, 144 Okla. 301, 291 P. 54; Springer v Cobb, 132 Okla. 11, 268 P. 1111; International Life Ins. Co. v. Bradley, 114 Okla. 231, 246 P. 222; and cases cited in those decisions.

Of course, holding that there is evidence sufficient to require submission of the issue to the jury is not a holding that the evidence requires a finding of authority, as was carefully pointed out in Springfield Savings Bank v. Kjaer, 82 Minn. 180, upon which Mechem comments as follows:

"The court takes pains in the case in 82 Minn. 180, supra, to point out that in none of these cases has the court held that the evidence was in law or in fact sufficient to establish the agency, but only that from the facts stated a trier of the facts might properly find that the authority in fact existed." Mechem, supra, p. 674, note.

We have no difficulty in concluding that the evidence in the case, in the condition in which it was when all parties rested, justified an inference of actual agency by implication, risked by the plaintiff in not producing further evidence if any it had, so that the instruction withholding determination of that fact from the jury constituted reversible error.

The defendants contend that there was no issue to submit to the jury because the facts as to agency were undisputed. There remained open possible reasonable differences of opinion as to the permissible inferences, so that it was improper to withdraw the question from the consideration of the jury. It not only requires that the facts be undisputed so far as they are presented in evidence, but also that there could be no reasonable difference in the inferences of fact to be drawn from them, that justifies a court in withdrawing the question from the jury. Clevenger v. Crosby & Mooney, 89 Okla. 55, 213 P. 76; Wood Realty Co. v. Greer, 100 Okla. 276, 229 P. 232; Continental Supply Co. v. Sinclair Oil &

Gas Co., 109 Okla. 178, 235 P. 471; Mechem on Agency (2d Ed.) sec. 295, vol. I, p. 213.

At one point in the case the plaintiff asked a question as to what appears to be an instrument in the form of a joint and several guaranty of payment executed by the makers and the payee to the plaintiff, but an objection to the question was sustained and no further questions were asked, and, unfortunately, there was no evidence even as to the execution of this guaranty, nor was its execution alleged. While it appears on the back of the mortgage, we have no way of knowing what might have developed as to execution or joint execution, had execution of the instrument been alleged. Since it was not alleged and no effort was made to prove its execution, we cannot assume that there was any such guaranty and cannot consider what effect it would have had if it had been executed and proved.

One trouble with this record is that it appears to indicate that each side seemed to fear developing the evidence to the fullest extent.

The judgment of the trial court is reversed, with instructions to grant the defendants a new trial.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., dissents.

Note.—See under (1) annotation in 23 L. R. A. (N. S.) 414; L. R. A. 1916B, 860; 21 R. C. L. 868; R. C. L. Perm. Supp. p. 5120; R. C. L. Pocket Part, title "Principal and Agent," § 43. (2) 21 R. C. L. 820, 821; R. C. L. Perm. Supp. p. 5108; R. C. L. Pocket Part, title "Principal and Agent," § 6.