## KANSAS EDUCATIONAL ASS'N OF THE METHODIST EPISCOPAL CHURCH FOR THE STATE OF KANSAS v. McMAHAN et al.

### No. 1149.

Circuit Court of Appeals, Tenth Circuit.
April 10, 1935.

Leslie J. Lyons, of Kansas City, Mo., and W. C. Austin, of Altus, Okl. (Donald E. Lyons, of Kansas City, Mo., on the brief), for appellant.

T. M. Robinson and Stansell Whiteside, both of Altus, Okl. (Robinson & Oden, of Altus, Okl., on the brief) for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

## McDERMOTT, Circuit Judge.

Suit to foreclose a mortgage on real estate given to secure two negotiable notes dated January 12, 1921, one for $500 due February 1, 1923, one for $5,000 due February 1, 1928. Both notes contain clauses granting the maker the privilege to pay $100 or multiple thereof, or the whole amount, on any interest-paying date after February 1, 1922, by giving sixty days' notice. Both notes and mortgage ran to the Pittsburg Mortgage Investment Company (hereafter called the Investment Company), which company assigned them to plaintiff below—appellant here—on February 5, 1921, the assignment being recorded on October 17, 1921. Defendants below acquired the land, subject to the mortgage, on April 26, 1921.

The defense is payment. Some time prior to November 5, 1923, McMahan communicated with the Investment Company as to the amount necessary to pay off the mortgage on the next interest-paying date; the record is not clear, however, as to whether this was but an inquiry or a notice as required by the notes. On November 5, 1923, the Investment Company advised of the amount necessary to be paid on February 1, 1924, the next interest-paying date, which included interest to that date. On January 10, 1924, McMahan paid that amount to the Investment Company. The Investment Company acknowledged receipt of it, credited plaintiff therewith on its books, but did not remit. The Investment Company did not have possession of the notes or mortgage, and apparently it paid plaintiff interest until February, 1929. It was then learned that the Investment Company had defaulted.

McMahan had constructive notice of the assignment of the notes and mortgage to plaintiff. McMahan testified he did not know of the existence of plaintiff until 1931, so there is no question of apparent agency, or estoppel to deny authority, involved. The simple question is presented of whether or not the Investment Company had actual authority to collect the moneys paid by McMahan.

As to the $500 loan due in 1923, the plaintiff wrote the Investment Company in 1924 to "look after the renewal or payment of the $500 bond." This was express authority to collect this item, and the decree in respect to this item is affirmed. As to authority to collect the $5,000 loan, which was not due when paid, the record shows:

J. Luther Taylor was the principal stockholder and managing officer of the Investment Company from 1903 until 1930. Plaintiff is a corporation which acquired and invested funds for Methodist churches and colleges, including Baker University. Taylor was a member of the Board of Trustees of Baker from 1900 until 1931, and was a director of plaintiff during the same period, and for years was treasurer of plaintiff. During this long period, the Investment Company had sold plaintiff many real estate loans, at one time plaintiff holding $250,000 of such. Every dollar of principal and interest collected on all of these loans during this 27-year period was collected by the Investment Company for plaintiff. Plaintiff never communicated with a borrower, nor collected a cent directly from a borrower, during this entire period. Taylor testified "it was understood and agreed that the Pittsburg Mortgage Investment Company should service all loans sold to the Kansas Educational Association and that service included the collection of the interest, principal, looking after the taxes and insurance, and all other matters in connection with proper servicing of loans sold to the Kansas Educational Association." When the Investment Company collected the principal of a loan, the sum collected was credited on the books of the Investment Company to plaintiff, and the proceeds later invested by the Investment Company in a new mortgage loan approved by plaintiff. Never, during the

years, did plaintiff remonstrate or protest against this exercise of authority. The treasurer of plaintiff admitted this long-standing practice, but testified to the erroneous legal conclusion that in making such collections, the Investment Company acted as agent for the borrower.[1]

The collection in question was handled in the same manner as all other collections of principal, a credit being passed to plaintiff on the books of the Investment Company. The Investment Company, however, did not reinvest the proceeds nor remit the principal. Upon the February, 1924, interest-paying date—when in fact both loans were paid off—plaintiff acknowledged receipt from the Investment Company, without protesting the exercise of authority, of the interest due on the $5,000 loan. In the same letter, the Investment Company is requested to procure payment or renewal of another loan. The treasurer of the plaintiff testified that when plaintiff purchased a mortgage from the Investment Company "We understood that the money would be remitted through the Pittsburg Mortgage Investment Company to us," and "that he expected the Investment Company to collect the interest and principal * * * and get it into the hands of plaintiff." The reports of plaintiff carried an account with "J. L. Taylor (Investing Agent)." The Investment Company did not have possession of the note or mortgage when any of these collections, throughout the years, was made. The notes were payable at the office of the Investment Company.

Actual authority may be established by direct testimony of powers expressly conferred, or by proof of other facts and circumstances from which the trier of the facts may find that the authority had been conferred. Where agency is asserted by a third party, quite generally it must be proven as a conclusion from other facts. Perhaps the most satisfactory indirect proof of actual authority is the acquiescence by the principal in the exercise by the agent of the challenged authority over a period of time. The Restatement of Agency, § 15, reads:

*"An agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act.*

"Comment: This consent may be communicated by any of the means stated in § 26, including acquiescence by the principal in a series of acts previously done by another as agent."

Restatement of Agency, § 26, provides:

*"Except for the execution of instruments under seal or for the performance of transactions required by statute to be authorized in a particular way, authority to do an act may be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.*

"Comment: Thus, a secretary who, without previous authorization, purchases office supplies which are paid for without objection by the principal, may reasonably conclude that the principal wishes a continuance of this practice and hence would be authorized to continue to purchase similar supplies."

[1] The original borrower—in this case one Hudson—signed an application for a loan in 1921 which contained a printed clause purporting to make the Investment Company the agent of the borrower for all purposes, the power conferred being irrevocable. This appointment does not purport to make the Investment Company the agent of McMahan, and could not do so. Moreover it has long been settled that agency is determined from all of the facts, of which such a stipulation is but one. Mr. Mechem, speaking to this precise point, and supporting the statement by an unbroken line of authorities, says:

"The question, moreover, is one to be determined by the law's methods rather than by the mere stipulations of the parties. It is not uncommon, especially in the case of insurance companies, loan companies, and the like, to insert stipulations in the printed applications that the agent conducting the negotiations shall be deemed to be the agent of the applicant rather than of the company. Stipulations of this sort may sometimes be helpful, but they cannot change the real conditions of things, and if, under all the circumstances, the agent is really the agent of the company, the stipulation that he shall be deemed to be the agent of the other party will be unavailing." Mechem on Agency (2d Ed.) § 301.

For Oklahoma cases on the point, see, Bell v. Riggs, 34 Okl. 834, 127 P. 427, 41 L. R. A. (N. S.) 1111; State Nat. Bank v. Bates, 128 Okl. 141, 261 P. 921; Swearingen v. Moore, 138 Okl. 24, 280 P. 295; Sherrill v. Cole, 144 Okl. 301, 291 P. 54; Schoeffel v. Craig, 157 Okl. 153, 11 P.(2d) 130.

And on the particular question here involved, § 43 (2) of the Restatement of Agency is:

"*Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future.*"

Mr. Mechem states the same rules in §§ 241, 244, as follows:

"The authority, moreover, need not be *expressly* conferred. In the great majority of the cases it is informally conferred, or is presumed from the acts and conduct of the principal. A large portion of the transactions of the modern business world is carried on by simple and informal means." Mechem on Agency (2d Ed.) § 241.

"* * * Whatever powers, therefore, the given principal may, by his course of conduct, by his general methods of dealing, by his long continued acquiescence or tacit approval, have in fact attached either to the given agent or to such an agent as he is, are to be deemed to exist when that agent proceeds to do similar acts with persons ignorant of any actual limitations put upon this authority. It is not essential in this case (unlike the case of estoppel to be hereafter considered) that the person dealing with the agent shall at the time have known of and relied upon the facts creating the authority any more than it is in any other case; if it in fact exists he may avail himself of it in the same way that a person who at the time really relied, for example, upon the incompetent assertions of the agent may afterwards show that custom justified the power though he was then ignorant of the custom. When the authority takes on these characteristics it becomes a case of actual rather than mere ostensible or apparent authority; and it is general as to all persons dealing with the agent rather than confined to the equities of a particular person." Mechem on Agency (2d Ed.) § 244.

These principles but follow the rule laid down by the Supreme Court of the United States in Martin v. Webb, 110 U. S. 7, 3 S. Ct. 428, 433, 28 L. Ed. 49, where it was held that authority to bind a principal "may be inferred from the general manner in which, for a period sufficiently long to establish a settled course of business, he has been allowed, without interference, to conduct the affairs of the bank. It may be implied from the conduct or acquiescence of the corporation, as represented by the board of directors. When, during a series of years or in numerous business transactions, he has been permitted, without objection, and in his official capacity, to pursue a particular course of conduct, it may be presumed, as between the bank and those who in good faith deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations."

The rule frequently has been applied to situations such as the one here. American Life Ins. Co. v. Brian, 34 N. M. 215, 279 P. 561; Illinois Bankers' Life Ass'n v. Grayson, 125 Okl. 81, 256 P. 894; Sherrill v. Cole, 144 Okl. 301, 291 P. 54; Catlin v. Reed, 141 Okl. 14, 283 P. 549, 67 A. L. R. 1410; Schoeffel v. Craig, 157 Okl. 153, 11 P.(2d) 130; International Ins. Co. v. Bradley, 114 Okl. 231, 246 P. 222.

The proof in this record supports, if it does not compel, the finding of the trial court that the Investment Company had actual authority to collect principal and interest of loans acquired by plaintiff from the Investment Company, when due. But authority to collect money when due does not in itself imply authority to collect money before it is due. Collection before due carries with it loss of interest on an investment; furthermore, a principal is in better position to check the doings of his agent if his authority is confined to collecting when due, for the principal knows when that time arrives. Mr. Mechem states the rule in which we concur, as follows: "And even though an agent have authority to receive payment of an obligation, this would not ordinarily authorize him to receive it before it is due, and thus, for example, cut off future interest, or surrender a valuable security; or even expose the principal to the risk of a payment at a time when he had not bargained for it. A power to receive payment must, therefore, usually be construed as authority to receive payment at maturity and not before. A known usage of trade or course of business in a particular employment, or a habit of dealing between the parties, may however, extend the ordinary reach of the authority. Thus an agent to loan money may be given such general authority over the subject as to authorize him to reinvest, change the form or amount of securities, and receive payment upon securities before they are due." Mechem on Agency (2d Ed.) § 958.

See, also, an inferential statement to the same effect, Restatement of Agency, § 72, Comment (c); McDonald v. Smith, 201 Mo.

App. 78, 206 S. W. 591; Brants v. Runnels (Mo. App.) 26 S.W.(2d) 1004; Lester v. Snyder, 12 Colo. App. 351, 55 P. 613; Little Rock & S. F. Railway Co. v. Wiggins, 65 Ark. 385, 46 S. W. 731; Thornton v. Lawther, 169 Ill. 228, 48 N. E. 412; Park v. Cross, 76 Minn. 187, 78 N. W. 1107, 77 Am. St. Rep. 630; Smith v. Kidd, 68 N. Y. 130, 23 Am. Rep. 157.

The $5,000 loan was paid before it was due. The note gave the maker the privilege to pay at stated intervals before it was due upon the giving of 60 days' notice. The record is in quite unsatisfactory shape as to whether such notice was given. McMahan testified that about 90 days before the February, 1924, interest-paying date, he wrote the Investment Company "to know what it would take to pay it off" and again testified "he wanted to pay it all off." The letter is not in evidence, and this testimony leaves it uncertain whether it was a notice of intent to pay or a mere inquiry. If a mere inquiry, there is no direct testimony in the record that the Investment Company was authorized to waive the notice. If such notice was given or waived, payment before maturity did not deprive plaintiff of interest to which it was entitled, for interest was paid by Mc-Mahan to the next interest-paying date, which was all plaintiff was entitled to under the prepayment clause.

The trial court did not make special findings, and there is no direct testimony that in the thirty years of dealings, any borrower paid off his loan prior to maturity. It may be that other loans purchased by plaintiff carried a privilege of prepayment clause; it may be that the Investment Company collected other loans prior to maturity or paid under the privilege clause. But we cannot well take judicial notice of such facts, nor ought the record to be silent upon vital facts which doubtless are disclosed, if they exist, by the records of plaintiff or the Investment Company or both, or could be elicited by inquiry from the officers of either.

We cannot subscribe to the doctrine that authority to collect principal and interest when due carries with it by necessary implication the authority to collect before maturity. It is not clear that the terms of the prepayment clause were complied with or waived. While we do not like to remand an equity case, we are unwilling to pass a final decree in the absence of proof of critical facts which should be susceptible of ready determination. When light is available, there is little reason for acting in the dark.

The decree so far as it concerns the $500 note and interest is affirmed; otherwise the decree is vacated and the cause remanded for the purpose of findings of fact upon supplemental proofs upon the questions: (a) Was the Investment Company authorized to collect moneys for plaintiff before they were due, either in accord with the prepayment clause or otherwise? That is, had it done so in the past with the knowledge and acquiescence of plaintiff to such extent that authority so to do can fairly be inferred? (b) If authorized to collect only when paid under the terms of the prepayment clause, did McMahan notify the Investment Company of his intent to pay in accord with that clause? (c) If not, was the Investment Company authorized to waive compliance with that clause?

Decree modified, and remanded for further proceedings.