UNITED STATES FIDELITY & GUARANTY CO. v. SHIRK *et al.*

No. 664, Ind. T.   Opinion Filed April 13, 1908.

(95 Pac. 218.)

1.   **PRINCIPAL AND AGENT—Authority—Estoppel by Conduct.** One who, by his conduct, has led an innocent party to rely upon the appearance of another's authority to act for him, will not be heard to deny the agency to that party's prejudice.

2.   **SAME—Ratification—Acceptance of Benefits.** One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own, with all its burdens, as well as all its benefits.

3.   **SAME—Knowledge of Agent Imputed to Principal.** The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it.

(Syllabus by the Court.)

*Error from the United States Court for the Northern District of the Indian Territory; before William R. Lawrence, Judge.*

Action on redelivery bond by John C. Shirk and Martha Goodwin against the United States Fidelity & Guaranty Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Wilson & Davis* and *W. S. Stanfield,* for plaintiff in error.
*W. H. Kornegay,* for defendants in error.

KANE, J.   This was an action commenced by the defendants
in error, plaintiffs below, who, for convenience, will hereafter be
called the plaintiffs, against the United States Fidelity and Guaranty Company, plaintiff in error, defendant below, who will hereafter, for convenience, be called the defendant, to recover on a redelivery bond given in a certain replevin suit, wherein John C.
Shirk *et al.* were plaintiffs and Jeff Davis was defendant.   When
the property in controversy was taken under the writ of replevin,
Jeff Davis as principal gave a redelivery bond with, as is contended by the plaintiffs, the United States Fidelity & Guaranty
Company as surety.   The plaintiffs in the replevin suit prevailed,
and, being unable to recover possession of the property replevied
or the value thereof from the principal, Jeff. Davis, commenced this
case to recover on the redelivery bond.   The cause was tried to a
jury in the court below which resulted in a verdict for the plaintiffs, and a judgment thereon was duly rendered.   The defendant
appealed from the judgment of the court below, assigning as
grounds for reversal various errors.

The main question, though, argued in the brief, has to do
with the signing of the redelivery bond.   The defendant contends
that it had two joint agents at Vinita authorized to execute and
deliver indemnity bonds; that these agents were acting under a
written power of attorney dated the 31st day of May, 1899, whereby
defendant did "constitute and appoint O. D. Neville and James
B. Burckhalter, of the city of Vinita, Cherokee Nation, Indian
Territory, to be its true and lawful attorneys in and for the Northern judicial district of the Indian Territory, for the following
purposes, to wit:

"To sign its name as surety to and to execute, acknowledge,
justify upon and deliver any and all stipulations, bonds, and undertakings given or required in any judicial action or proceeding
brought or pending within the aforesaid district of the said terri-

Vol. 20—37

tory. It being the intention of this power of attorney to fully authorize and empower the said O. D. Neville and James B Burckhalter to sign the name of said company and affix its corporate seal as surety to any or all of said stipulations, bonds, and undertakings, and thereby to lawfully bind it as fully and to all intents and purposes as if done by the duly authorized officers of said company with the seal of said company thereto affixed, and the said company hereby ratifies and confirms all and whatsoever the said O. D. Neville and James B. Burckhalter may lawfully do in the premises by virtue of these presents."

It is admitted by counsel for defendant in their brief that the redelivery bond was signed by the United States Fidelity & Guaranty Company by O. D. Neville, who was at that time one of two joint agents under the power of attorney, but they insist that O. D. Neville and James B. Burckhalter were jointly authorized to sign for the company, and the signature of the company by Neville alone was not binding.

The redelivery bond was lost, and could not be produced at the trial of the cause below, and secondary evidence was introduced to prove the contents thereof, as well as the form of the signature. Plaintiff also sought to establish the agency of Neville by oral evidence. The written power of attorney from which we quote above, and another written instrument executed on the 11th day of May, 1899, appointing Neville general agent of the defendant, were identified by Neville on cross-examination by counsel for defendant and by him introduced in evidence. The written instrument last referred to had the following clause:

"This is to certify that O. D. Neville, of Vinita, in the state of Indian Territory, the duly authorized agent of the above company, with full power to solicit and receive proposals for such fidelity, official contract, and judicial bonds as may be written by said company in the Indian Territory, to receive the premiums thereon and to issue such bonds of such company as are signed by the president, or first or second vice presidents and secretary or assistant secretary and sealed with the corporate seal, subject to all the rules and regulations, and to such instructions as may from time to time be given him by said company. Nothing herein contained shall in any way restrict or abridge the authority

granted said O. D. Neville under the power of attorney given by this company to sign bonds."

Mr. Neville, in his testimony, seemed to be in doubt as to which authorization he was acting under when he executed the bond in this case, but he stated that he usually signed the bonds executed under his agency by signing the name of his principal by himself as agent, and that Mr. Burckhalter occasionally signed also. He was not sure whether Mr. Burckhalter signed the bond in this case with him; but he states that he thought he did. This evidence of Mr. Neville was all that was adduced at the trial upon which the defendant bases its claim that Mr. Neville signed the bond alone. Mr. Neville, though, was sure that the redelivery bond was executed, and the premium therefor collected and forwarded to the defendant at its home office. Mr. Neville and other witnesses testified that the defendant never made any complaint as to the form of the signature to the bond, or raised any objections to its validity until after the judgment was rendered against Jeff Davis for a return of the property retained by him in the replevin suit, and the defendant discovered that Davis could not return the property or its value.

Evidence was also introduced by plaintiff tending to show that Mr. Neville, at the time he was agent for the defendant under the same appointment as when he executed the bond in this case, signed the name of the defendant to several other indemnity bonds without having Mr. Burckhalter join in the execution, and the defendant accepted the premiums without questioning the form of the signature. The introduction of this class of evidence was objected to by defendant, and is one of the grounds of error assigned. We think there was no error in admitting this evidence under the circumstances of this case. The nature of the agency did not necessarily require a written authorization; and, if it could be shown that the principal and agent themselves voluntarily abandoned the strict terms of the written appointment, it would be a hard rule to permit the principal to allow its agents to execute indemnity bonds without regard to the form of their

appointment, and receive the premiums therefor as long as there was no loss, but upon a loss occurring insist on the exact letter of their compact.

"A large portion of the transactions of the modern business world is carried on by simple and informal means. A word or a look or gesture often suffices to give assent to great undertakings, or to set in motion the complicated machinery of commerce. Little often is said or written, but that little carries with it a train of legal consequences no less certain and definite than if the whole were included in the spoken or written words. This being so, good faith is strenuously insisted upon, and one who by his conduct has led an innocent party to rely upon the appearance of another's authority to act for him will not be heard to deny the agency to that party's prejudice. Hence it is that in many cases the existence of an agency is implied or presumed from the words or conduct of the parties." (Mechem on Agency, § 83.)

Besides, this evidence was admissible to show the construction the principal and agent put upon their own contract of appointment. It is somewhat unusual to insist that the actual manual act of signing the name of a principal to a written instrument must be done by two persons where the agency is joint, in order to give effect to the instrument. No case is called to our attention where, under the facts existing here, such an omission is held to be fatal to the validity of a contract thus executed, nor have we been able to find one. Hence we would be loath to give this contract of appointment such a construction as would destroy the validity of the redelivery bond when the principal and agent in cases where no less occurred have not done so. It is apparent from the evidence that the construction put by Neville on his authority during the time he was acting as agent of the defendant was that he had the power to execute bonds with or without the signature of Burckhalter; and that the company ratified such acts, and received premiums for all bonds executed by Neville alone without question, is also apparent.

In the case of the *District of Columbia v. Gallaher,* 124 U. S. 505, 8 Sup. Ct. 585, 31 L. Ed. 526, Mr. Justice Matthews, speaking for the Supreme Court of the United States, says:

"We think that the practical construction which the parties put upon the terms of their own contract, and according to which the work was done, must prevail over the literal meaning of the contract."

It is a rule of universal application that:

"He who would avail himself of the advantages arising from the act of another in his behalf must also assume the responsibilities. If the principal has knowingly appropriated and enjoyed the fruits and benefits of an agent's act he will not afterwards be heard to say that the act was unauthorized. One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own with all its burdens, as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole." (Mechem on Agency, § 148.)

To avoid the force of the above rule, counsel for defendant insists that the defendant had no notice that Mr. Neville was signing its name to bonds without Mr. Burckhalter joining. This contention, though, cannot be upheld. The evidence shows that Mr. Neville signed practically all the bonds executed while he was acting under the same appointment in force at the time he executed the bond sued on herein without Mr. Burckhalter joining in the signature. Indeed, this was the rule rather than the exception, so it cannot now be said with any degree of reason that the defendant had no notice of the manner its agent was executing these bonds. The execution of such instruments being within the scope of the agency, "the law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he has acquired so recently as to reasonably warrant the assumption that he still retained it, provided, however, that such notice or knowledge will not be imputed (1) where it is such as it is the agent's duty not to disclose; and (2) where

the agent's relations to the subject-matter, or his previous conduct, render it certain that he will not disclose it; and (3) where the person claiming the benefit of the notice or those whom he represents colluded with the agent to cheat or defraud the principal." (Mechem on Agency, § 721.) There is no evidence in the record tending to show that this case falls within the exceptions to the rule stated by Mr. Mechem.

It was not error for the court to refuse to grant the motion of defendant for a peremptory instruction to return a verdict in its favor. While there seems to be no particular dispute on the facts except as to the agency of Mr. Neville, we think the court below adopted the proper practice in submitting the conflicting evidence on this point to the jury. There being evidence reasonably tending to support the verdict, it will not be disturbed. The instructions given by the court state the law applicable to the correct theory of the case with substantial accuracy. The instructions asked by the defendant and which the court refused to give were all predicated upon the theory that the iron-clad terms of the written power of attorney absolutely precluded the plaintiffs from recovering and excluded the theory of estoppel, or the ratification of the agent's acts by the principal. If the court had adopted this theory, a peremptory instruction would have been all that was necessary, and the only one that would have been proper. We believe this theory was untenable, and the instructions were properly refused.

From a careful review of the proceedings had in the court below, we are convinced that there was no error justifying a reversal of the judgment.

It is therefore affirmed.

All the Justices concur.