### DREW v. ANDERSON, CLAYTON & CO. et al.

No. 16783—Opinion Filed June 15, 1926.

Rehearing Denied Nov. 16, 1926.

**1. Appeal and Error — Review — Questions of Fact—Agency.**

Where agency and the scope thereof are to be determined upon conflicting evidence, they are questions of fact, and the findings of the court thereon, in the absence of a jury, will not be disturbed on appeal, if there is any evidence reasonably tending to support the same.

**2. Principal and Agent—Ratification of Acts by Acceptance of Benefits.**

One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own, with all its burdens, as well as all its benefits.

**3. Bills and Notes—Payment Before Maturity to Other than Holder or Authorized Agent at Payer's Risk.**

Payment of negotiable note before maturity to any one other than the holder thereof, or his duly authorized agent to receive such payment, is at the risk of the payer.

**4. Same—Payment to Mortgagee not Binding on Assignee.**

Payment of a negotiable note, secured by a mortgage, by the mortgagor or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon the assignee thereof before maturity, who had possession of the papers at the time of payment, unless he had expressly or impliedly authorized such payment.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Grady County: William H. Zwick, Assigned Judge.

Action by Anderson, Clayton & Company et al. against Byron Drew. From a judgment for plaintiff, Drew appeals. Affirmed.

Sigler & Jackson, for plaintiff in error.

Chas. Hill Johns and Bond, Melton & Melton, for defendants in error.

Opinion by ESTES, C. In 1920 Drew sold Williams 200 acres for $10,000. Williams paid $3,000 cash and the proceeds of a first and second mortgage to the Maxwell Investment Company for a certain sum. and executed his note for $2,000, secured by a third mortgage on the land in favor of Drew for the balance. Williams also executed to one P. C. Stacy his negotiable promissory notes for $1,000 each, and secured same by fourth mortgage on the identical land. By mesne assignments, the two Stacy notes came into the hands of defendant in error Anderson, Clayton & Company, as bona fide holder for value before maturity, but no assignment of the mortgage to said company was ever recorded, the record title to said Stacy mortgage remaining in him. In 1922, Drew filed suit to foreclose his said mortgage, making Stacy, the record owner of the fourth mortgage, a party defendant. Stacy filed disclaimer. After the suit had been pending about a year, Drew made an arrangement with Williams. hereinafter referred to, and procured a release from Stacy of the fourth mortgage, and thereupon dismissed the action with prejudice. By the terms of that agreement, Williams delivered to Drew a warranty deed for the land, and the latter surrendered to Williams his $2,000 note and took possession of the land. Thereafter, Anderson. Clayton & Company, plaintiff. filed suit on its two $1,000 notes against Williams and Drew, praying judgment against Williams for the amount thereof, and to foreclose the fourth mortgage given by Williams to Stacy, and further prayed judgment against Drew on the allegation that Drew had agreed to assume the payment of the plaintiff's notes at the time, and as a part of the consideration in said settlement and agreement with Williams by which Drew procured the title and possession of the land from Williams. Drew answered that he had not agreed to pay the indebtedness of plaintiff company. but had agreed only to release Williams from the $2,000 indebtedness on the promissory note given by Williams to Drew. secured by said third mortgage. Williams answered that the contract between himself and his codefendant Drew was an alleged by plaintiff. and prayed that if judgment went against him for the amount of said two notes, that

he have judgment over against Drew therefor. A jury was waived and the cause submitted to the court. It was also stipulated that if sale were ordered, the land should be sold subject to the first two mortgages in favor of Maxwell Investment Company. The court found, inter alia, that Williams had become financially embarrassed and unable to pay his numerous notes, and entered into an agreement with Drew

"to the effect that if Williams executed this deed, that Mr. Drew would relieve Mr. Williams from any liability by reason of the purchase of this real estate; * * * that Mr. Drew had positive knowledge of the respective notes and mortgages securing the same on this property, at all times, from the execution of the notes and mortgages to the final settlement."

The court rendered judgment "for plaintiff company against Williams for such sum as may be found to be due, if any, after the sale of the real estate in question, but in the event that a personal judgment is rendered against defendant Williams, that he, in turn, have judgment against the defendant Byron Drew for any sum he is compelled to pay as a personal judgment." Defendant Drew appeals.

1. The first assignment is that plaintiff failed to prove the agreement of Drew to assume the payment of plaintiff company's indebtedness. Mr. Drew lived at Ardmore and the transactions took place in Chickasha, or in Grady county, where the land is. Certain letters between Drew's attorneys in Ardmore and Williams' attorney and others in Chickasha were introduced, tending to show that Drew dismissed his case against Williams in consideration of the deed from Williams to Drew, accepting the land, subject to the prior indebtedness of the Maxwell Investment Company, in payment of the Williams note to Drew, on which suit had been filed by the latter, a condition of such settlement being that Stacy, the record owner of the fourth mortgage, release the same. It is admitted that a Mr. Hartman, at Chickasha, was the agent of Drew in renting some of the latter's farms, collecting rents and for other purposes. Plaintiff claims that Drew assumed the payment of the Stacy notes held by plaintiff, by Hartman as his agent, but Drew denies that such agreement was within the scope of Hartman's authority. Hartman testified:

"Q. When he made this proposition to you, it was his proposition that Mr. Drew would take up all the indebtedness outstanding against the land? A. His proposition was this, and I submitted it that way, that he be released from all liability in

regard to the land, and he would deed Mr. Drew the land. Q. You submitted that proposition to Mr. Drew? A. Yes, sir. Q. What did Mr. Drew reply; did he answer that? A. Yes, sir; he answered it, but my recollection, I—I don't know—but any way, as soon as I got the letter, Mr. Williams happened to come in that day. He says, 'I wish you would let me have that letter.' I says, 'All right'. Q. Did he authorize you to carry out the transaction the way you submitted it to him? A. Yes, sir. Q. He accepted your proposition the way you submitted it to him? A. That is the way I understood it. Q. And you submitted it to him just the way Williams put it up to you? A. Yes, sir."

It thus appears that there is some competent evidence that Hartman submitted to Drew the proposition that Drew was to assume all indebtedness of Williams against the land and that Drew himself agreed to do so. The other facts and circumstances and Drew's conduct tend to show that Drew effectuated the arrangement with Williams, through Hartman, although Drew perhaps did not appreciate the legal effect thereof. The attorney for Williams testified, "that the entire matter was being settled by Mr. Drew, discharging Mr. Williams from any liability on representations made by Mr. Hartman." This attorney had filed Stacy's disclaimer in Drew's foreclosure suit, and thereafter delivered to Hartman the deed from Williams to Drew for the land and the release of the fourth mortgage by Stacy securing plaintiff's notes. Defendant Williams testified that Drew, through Hartman, agreed to cancel not only Williams $2,000 note sued upon by Drew, but to assume all outstanding indebtedness against the land and relieve Williams therefrom. The agreement that was reached between Williams and Drew was partly by correspondence, so as aforesaid, between Drew's lawyers and the attorney for Williams, and also with Hartman, these letters tending to show, as stated, that Drew agreed only to release Williams from the indebtedness of the latter to him. But the oral testimony, aforesaid, and other circumstances and conduct of Drew, must be considered in connection with said letters to determine the scope of Hartman's authority. Where agency and the scope thereof rest in a writing, it is a question of law for the court (Central Mortgage Co. v. Michigan State Life Ins. Co., 43 Okla. 33, 143 Pac. 175), and when they rest both in writing and in parol, and the parol evidence corroborates the writing, it is still a question of law for the court (Stacy v. Browne, 99 Okla. 104, 219 Pac. 336). But, where agency and the scope

thereof are to be determined from conflicting evidence, they are questions of fact for the jury, or the court, in the absence of a jury, and the finding thereon will not be disturbed on appeal, where there is any evidence reasonably tending to support the same. Ginner & Miller Pub. Co. v. N. S. Sherman Mach. & Iron Wks., 93 Okla. 221, 220 Pac. 650. In the instant case, the parol evidence was not in corroboration of the said letters. The questions of Hartman's agency and the scope thereof were determined on conflicting evidence resting in both the letters and parol. We cannot say that the facts and circumstances herein do not reasonably tend to support the finding of the court, to the effect that Drew agreed to relieve Williams from any liability by reason of the purchase of this real estate.

2. In U. S. Fid. & Guar. Co. v. Shirk, 20 Okla. 576, 95 Pac. 218, the rule is stated that—

"One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own, with all its burdens, as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole."

Drew accepted the benefits of his settlement with Williams—he took the deed from Williams and the possession of the 200 acres. If his agent, Hartman, exceeded his authority in making this settlement, Drew has never offered to rescind the transaction or to forego any of the benefits by him derived therefrom. So far as defendant Williams is concerned, Drew cannot retain these benefits without assuming all the burdens of the contract, and since, as herein shown, Hartman did make the contract, as contended by plaintiff, Drew cannot complain of the judgment over against him for any amount which Williams may be compelled to pay after sale of the land.

3, 4. It is next assigned that Drew was an innocent purchaser of the land for value without notice, and is entitled to protection as such against the claim of plaintiff. Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148, is decisive against this contention. As stated, the court found that Drew had positive knowledge of the notes and mortgages in controversy. Stacy had sold and assigned the two notes in controversy, whereby plaintiff became the owner and holder for value without notice. Without authority, Stacy released this mortgage. Drew made his settlement with Williams, by which he procured the Stacy release

without requiring the surrender of the Stacy notes. Drew claims that one condition of his settlement with Williams was that the Stacy mortgage be released by Stacy. Long prior to procuring the release of this mortgage, Stacy had filed a disclaimer in the foreclosure suit which Drew had brought against Stacy and Williams. The indorsement and delivery of the Stacy notes to plaintiff carried with them the mortgage without any formal assignment thereof. See Chase Case, supra, and authorities therein. Under that case, the settlement of Drew with Williams, by which Drew procured the release from Stacy of the mortgage standing in Stacy's name, which mortgage secured the notes held by plaintiff, that is, by which Drew undertook to effectuate payment or liquidation of the notes and indebtedness held by plaintiff, was at the risk of Drew, and since Stacy was not in possession of the notes and mortgage, and plaintiff was an assignee and in possession thereof before maturity, and plaintiff had not expressly authorized such settlement of the mortgage indebtedness by Stacy, the same was not binding upon the plaintiff. In the Chase Case, the record mortgagee, who had assigned the notes and mortgage, was paid a cash consideration for the release; in the instant case Stacy, the record mortgagee, was paid no consideration whatever. Drew knew that the Stacy notes were negotiable. He should have withheld his settlement with Williams until Stacy produced the notes. As stated in the Chase Case, he neglected this simple precaution which was required of him, not only by law, but by ordinary prudence. While one of the parties must suffer on account of the misconduct of Stacy in wrongfully releasing the mortgage, yet plaintiff company did not act to induce Drew to make the settlement with Williams whereby he claims payment and liquidation of plaintiff's notes, but Drew acted imprudently without due inquiry and care, and must be held to have made such settlement at his peril. He was not an innocent purchaser of the land.

The last contention of Drew is that if plaintiff's mortgage still subsists, that his, Drew's prior mortgage, is still alive and should be so held for the purpose of priority in foreclosure over plaintiff's mortgage. This contention is untenable because, under the facts, there was clearly a merger of the legal and equitable estates in the land in Drew when he took the deed and possession of the land from Williams, and surrendered the notes of the latter held by Drew, and dismissed the foreclosure action thereon. When the circumstances under which a mer-

ger ordinarily takes place are shown, the burden rests upon him who alleges that there was no merger to prove the contrary intention, or to prove facts and circumstances from which it will be presumed. Yoder v. Robinson, 45 Okla. 165, 145 Pac. 775; Gainly v. Anderson (S. C.) 68 S. E. 888, 31 L. R. A. (N. S.) 323. This contention is also untenable because the finding of the court that Drew agreed to pay all outstanding indebtedness of Williams on this land is reasonably supported by the evidence.

Let the judgment be affirmed.

By the Court: It is so ordered.