## LIBERTY NAT. BANK OF PAWHUSKA v. EXENDINE, Ex'r.

No. 20655. Opinion Filed March 22, 1932.

Sands & Campbell and Hamilton, Gross & Howard, for plaintiff in error.

Wilson & Duncan, for defendant in error.

RILEY, J. This is an action commenced by defendant in error, herein referred to as plaintiff, against plaintiff in error, herein referred to as defendant, to recover a balance of a deposit placed in said bank.

Plaintiff alleged, in substance, that on June 28, 1925, he deposited $13,742.19 in defendant bank, and thereafter withdrew all of said sum except $7,011.02 by checks drawn by him in the regular course of business, and that on May 16, 1928, plaintiff, by check drawn on said account presented to said bank for payment, demanded the payment of said balance and that defendant refused to pay the same.

Defendant answered by general denial, and in addition thereto alleged, in substance, that plaintiff deposited the amount alleged in the petition; that at the time the deposit was made plaintiff made out and left with defendant a "signature card" showing the name and form of signature to be used on checks to withdraw the deposit, showing on said card the name of plaintiff and also A. B. Burris, plaintiff's attorney, and authorized and directed the bank to pay out any and all said money and honor and pay from said account all checks signed as shown by said card either by plaintiff or said attorney; that defendant had received from plaintiff and others checks duly signed as so authorized, all presented in the usual course of business, and were paid by defendant, and upon which all the money so deposited by plaintiff was paid out and disbursed as authorized and directed by plaintiff, the signatures thereon being the same as shown on said "signature card." That said checks were signed by plaintiff or A. B. Burris, his attorney; that all of said money had been paid out on checks thus signed and presented prior to the commencement of said action; that about the time said deposit was made, plaintiff, who was a competent and well-known football coach, had been em-ployed as such in the state of California, which employment required him to be away from Oklahoma much of the time; that plaintiff at the time of making said deposit informed defendant of these facts and advised defendant that his attorney was authorized to sign the name of plaintiff to checks drawn against said deposits, and instructed defendant to pay all checks so drawn and signed; that checks so drawn and signed either by plaintiff or said attorney to the full amount of said deposit had been presented to and paid by said defendant bank and the vouchers returned to plaintiff; that thereby the full amount of said deposit had been withdrawn by plaintiff and his said attorney with full knowledge on their part and with plaintiff's consent and approval.

Plaintiff replied by general denial. The cause was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.

After the return of summons defendant appeared specially and moved the court to quash the service for the reason that the summons was not issued, served, and returned according to law. Thereafter, and before the court ruled upon this motion, plaintiff apparently moved for leave for the sheriff to amend the return. Thereafter the court made the following order:

"That the sheriff be and he is hereby granted 24 hours from this time in which to amend his return of the summons in this action."

No exception was saved to this order. On the same day, the court overruled the motion to quash service, and defendant excepted. No amended return was ever made or filed by the sheriff. On the same day that the court made the order overruling the motion to quash, defendant, without waiting for the amended return, filed a demurrer to the petition.

The first assignment presented is that the court erred in overruling and denying the special appearance and motion to quash.

There is little merit in this assignment. The summons was regular on its face and no exception was made thereto. The return of the sheriff was irregular and uncertain. The return reads as follows:

"Received this writ May 17th, 1928, o'clock M., and as commanded therein, I summoned the following persons, defendants within named, at the times following, to wit: Served G. B. Mellott, President of Liberty National Bank, a Corporation of Paw-

huska, Okla. on May 18th, 1928, by delivering to said defendant, personally, in said county, a true and certified copy of the within summons with all the endorsements thereon. * * *

"H. M. Freas, Sheriff, Osage County by C. S. Cooksey, Deputy."

The motion of plaintiff for leave for the sheriff to amend the return is not in the record, and the record does not show in what particular the return was proposed to be amended, nor what the amendment was that the court by its order allowed the sheriff to make. The record does show, however, that the matter was presented to the court by counsel and argued by both sides. It is quite evident that the court, the plaintiff, and defendant all understood what amendment was proposed to be made to the return, and that the return when the amendment was so made would show the service of the summons to be regular. It is also apparent that the court and defendant treated the amendment as having been made, for defendant, without waiting for the expiration of the 24 hours given by the court to amend, filed its demurrer. It would have been better practice for the court to require the amendment to be made before entering the order overruling the motion.

The return, though not a model, shows that a certified copy of the summons with all indorsements thereon was delivered to G. B. Mellott, who was president of the defendant bank. No other inference can be drawn from the return than that a true and certified copy of the summons with all the indorsements thereon was delivered to G. B. Mellott, president of the Liberty National Bank, on May 18, 1928, by the sheriff of Osage county, acting by and through his deputy C. S. Cooksey.

Section 247, C. O. S. 1921, provides that a summons against a corporation may be served upon the president, etc. The return does show that the sheriff served G. B. Mellott and that G. B. Mellott was president of the Liberty National Bank, a corporation.

The next assignment presented is that the court erred in refusing evidence offered by defendant intended to show that plaintiff had authorized A. B. Burris, his attorney, to sign checks on deposits of plaintiff in other banks, and in refusing to admit evidence intended to show that such checks drawn on other banks had been honored by said banks in regular course of business.

The apparent purpose of the offer was to prove an implied agency with power generally to sign plaintiff's name to checks.

With reference to the manner of their appointment, agents are either express or implied. If they are appointed in terms, whether orally or in writing, the agency is express; if they are not appointed in terms, but the appointment is implied as a matter of fact from the conduct of the parties and the circumstances of the case, the agency is implied. 2 C. J. 426.

Defendant in his amended answer pleaded an express appointment or designation of A. B. Burris as the agent of plaintiff by the "signature card" alleged to have been made out by plaintiff and left with defendant at the time of making the deposit, an express declaration made by plaintiff at the same time. Defendant pleads that it was upon this express authorization and the express statement made by plaintiff in reference to the particular deposit that it relied in paying out the money so deposited. There is no allegation in the answer of conduct of the parties and circumstances such as to constitute implied agency. Having pleaded an express appointment or designation of an agent, defendant was not entitled to introduce evidence tending to prove an implied appointment or designation.

The third assignment presented is alleged error by the court in requesting the attorney for the plaintiff to rewrite an instruction to take the place of two instructions which had already been given, and in withdrawing the two instructions from the jury and permitting the attorney for plaintiff to rewrite an instruction to be given in lieu thereof, all in the presence of the jury.

Defendant argues at length that all of this was in the presence and probably in the hearing of the jury. The record does not disclose at whose suggestion the two instructions were withdrawn, whether at the suggestion of plaintiff or defendant, or whether the two instructions were withdrawn by the court of its own motion.

Under this assignment no contention is made that the two instructions should not have been withdrawn or that there was error in the one given in lieu thereof. The sole contention made is that the jury was probably influenced by the fact, if it be a fact, that the instructions were withdrawn and the court requested the attorney for the plaintiff to draft one to be given in lieu thereof in the presence of the jury. Whatever may have occurred, the defendant does not seem to have attached much importance to it at the time. So far as the record shows, it may have been, at that time, entirely satisfactory to defendant, for there

was no objection made at the time and no exception saved to the action of the court. The question was raised for the first time in the motion for a new trial. In the absence of an objection and exception saved at the time, the error, if any, was waived. The assignment is, therefore, not well taken.

The fourth assignment presented is that the court erred in failing and neglecting to properly state the issues made by the pleading to the jury. Just what issue or issues claimed to be raised by the pleading and not covered by the statement of the court to the jury is not made clear. It is first claimed that there was "carefully plead a state of facts which would estop the plaintiff from claiming that the defendant had a right to pay all checks signed by the witness Burris." No such claim was made by plaintiff. Perhaps counsel mean to say that a state of facts was carefully pleaded which would estop plaintiff from claiming that defendant had no right to pay, etc. What the alleged state of facts so carefully pleaded is and what evidence was introduced to sustain the same are not pointed out.

It is next suggested that delivery back to the plaintiff of the disputed canceled checks after their payment is pleaded. This statement is contained in the answer, but there is no allegation that plaintiff made no objection to the payment of the disputed checks within a reasonable time.

It is next suggested that the answer pleads knowledge on the part of plaintiff that money had been paid on such checks. The answer does not allege that the plaintiff had such knowledge before the entire deposit had been withdrawn on the alleged forged checks. Nowhere does the answer allege that plaintiff had knowledge that such checks were being drawn, presented, and paid at the time.

We are unable to find any evidences to support any of the above allegations. Counsel for plaintiff had challenged defendant to point out such evidence, but none has been pointed out. It is only such issues as are raised by the pleadings and supported by some evidence that are required to be stated to the jury by the court.

Furthermore defendant made no exception whatever at the time wherein the statement of the issues was claimed to be deficient. All that is shown by the record is the single statement, "defendant excepts," at the close of instruction No. 1, wherein the issues were stated to the jury.

Counsel owe a duty to the court as well as

their clients. If the trial court, by inadvertence, fails to include one or more proper issues in his statement to the jury, it is the duty of counsel to call the attention of the court thereto, either by a request for a more definite statement, pointing out the alleged deficiency, or by offer of a proper instruction. St. L. & S. F. v. Routh, 133 Okla. 168, 271 P. 835; Gourley v. Jackson, 142 Okla. 74, 285 P. 84.

The fifth assignment is based upon the refusal of the court to give the whole of an instruction offered by defendant.

Defendant offered an instruction as follows:

"You are further instructed that if you believe from the evidence in this case the name of A. A. Exendine, administrator of the estate of Wah-kon-tah-he-um-pah, deceased, was signed by A. B. Burris to some of the checks in question, and if you further believe that the plaintiff, A. A. Exendine, had authorized the said A. B. Burris to sign his name to said checks the signature would be just as binding upon A. A. Exendine as if he had signed it himself.

"And, in that event, you are further instructed it would not be necessary for A. B. Burris to sign his name also to the check below the name of A. A. Exendine."

The court gave the first paragraph and refused the second. It is urged that this was error. That part of the instruction requested which the court refused would have added nothing to the one given. The court told the jury that if plaintiff authorized A. B. Burris to sign plaintiff's name to the checks in question, the signature would be as binding upon plaintiff as if he had signed it himself. The instructions given covered the question as completely as it would have been covered had the entire instruction been given as requested. The portion omitted was surplusage.

The sixth assignment is that the court erred in giving the substituted instruction, in that it told the jury that the burden was on plaintiff to prove by a fair preponderance of the evidence that defendant had failed, neglected, and refused to pay the balance of the deposit on proper demand therefor, and told the jury that if it was made to appear that payments were made aggregating that or any less amount on checks not drawn by plaintiff, but on checks drawn by A. B. Burris, then, in that event, the burden was on defendant to show by a preponderance of the evidence the authority of said Burris to sign the name of plaintiff to such checks, and that if defendant failed to show such

authority by a preponderance of the evidence the verdict should be for plaintiff, etc., that is, the court told the jury that the plaintiff must prove his case by a fair preponderance of the evidence, and when he had done so, the burden shifted to the defendant to prove by a preponderance of the evidence the authority of Burris to sign, etc.

There appears to be no reason for using the words "fair preponderance" as applied to the burden of proof required of plaintiff, and only the word "preponderance" as applied to the burden of proof required of defendant. However, if there was error in this, it was in defendant's favor, and it has no right to complain on account thereof. In some states the words "preponderance" and "fair preponderance" are held to mean substantially the same thing. Bryan v. C., R. I. & P. Ry. Co., 63 Iowa, 464, 19 N. W. 295. Other states hold that where the words "fair preponderance" are used something more than a preponderance is meant.

In De St. Aubin v. Field et al., 27 Colo. 414, 62 P. 199, it is said:

"'Fair' means 'free from clouds,' 'not obscure.' The use of this adjective in connection with the word 'preponderance' placed a greater burden upon the appellees than the latter, or made it necessary for them to establish the facts upon which they relied by more than a simple preponderance of the testimony."

In Lantry Sons v. Lowrie (Tex.) 58 S. W. 837, it was held:

"In order for a party to establish an issue upon whom the burden may rest, it is only necessary that this be done by a preponderance of the evidence, and the use of the expression 'fair preponderance' conveys the idea of something more than preponderance," and the use of the word "fair" in such connection is a charge is improper."

No case is cited which holds that the use of the words "fair preponderance" places a lesser burden upon a party than the word "preponderance." Therefore, if the use of the words "fair preponderance" as applied to plaintiff's burden was the error, it was against plaintiff and in favor of defendant. The rule is well established that a party will not be heard to complain of an error made in his favor.

The seventh and last assignment presented is that the court erred in overruling the motion for new trial based upon newly discovered evidence.

The alleged newly discovered evidence re-

lied upon is that, although defendant had used A. B. Burris as a witness at the trial, it did not know at that time that Burris had paid plaintiff at least, $1,200 of the money which he had received from the bank on the checks alleged to have been forged by Burris; that Burris first made this known after the trial. A supplemental motion for a new trial on the grounds of newly discovered evidence was supported by the affidavit of A. B. Burris. The trial court heard evidence in support of the motion and against it covering some 70 pages of the record. After such full hearing the motion was denied. In this there was no error, for two reasons: (1) The showing of diligence was insufficient. (2) Before a new trial will be granted upon the ground of newly discovered evidence it must be made to affirmatively appear that the new evidence would be sufficient to probably produce a different result. In such case the trial court should exercise a reasonable discretion. Yukon Mill & Elevator Co. v. Imperial Roller Mills Co., 34 Okla. 817, 127 P. 422.

The trial court is vested with a certain amount of discretion in such matters, and his ruling denying a motion for a new trial on the ground of newly discovered evidence will not be reversed upon appeal unless the Supreme Court can determine that such evidence would probably produce a different result. Eisminger v. Beman, 32 Okla. 818, 124 P. 289.

A careful examination of the record will disclose that the uncorroborated testimony of the witness A. B. Burris is relied upon. A comparison of his testimony on the motion for a new trial with that given at the trial does not justify this court in determining that the new evidence would probably produce a different result. Therefore, we will not reverse the order of the trial court denying a new trial.

The judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.