BULLARD et al. v. CAULK.

No. 34297.   Oct. 16, 1951.

Rehearing Denied April 23, 1952.

243 P. 2d 691.

Wendell G. Stockton, Oklahoma City, for plaintiffs in error.

Frank J. Wiley, Oklahoma City, for defendant in error.

JOHNSON, J.   The parties herein occupy the same relative positions as in the trial court and hereafter they will be referred to as they there appeared.

Plaintiffs brought action against D. N. Caulk and Lloyd Reagan for cancellation of a contract to sell them real property, alleging, among other things, that after all payments on the contract had been made and prior to instituting the action, they had made due demand for conveyance to them by an abstract warranty deed according to the contract the following described property, to wit:

N½ of SW¼ Lot 7 and S½ of SW¼ of Lot 7, Section 6, Twp. 11N, Range 1E, in the county and state of Oklahoma;

that though they had complied with the contract the defendants refused to convey said property to plaintiffs; that Lloyd Reagan was, from the 6th of January, 1944, until November 10, 1947, the duly qualified and acting agent of the defendant Caulk, and asked for refund of $600, plus $75 interest, alleged to have been paid Caulk through Reagan as Caulk's agent, and for $300 attorney fees, and for recovery of $599.25 for expenses in improving the land, a total of $1,574.25 money judgment.

D. N. Caulk filed a verified answer and cross-petition, admitting the contract for the purchase of the land, but denied that he, Caulk, had received payments on said contract other than $150; denied that Reagan was his agent or that he was acting under any authority from him in receiving or accepting any payments on said contract; denied the damages claimed and alleged that time was of the essence of the contract; that he was willing and able to comply with the contract; and further alleged breach of the contract in that they had failed to make payments of principal and interest; failed

to pay the taxes, failed to reimburse defendant for taxes he was forced to pay, and that plaintiffs removed certain improvements from the land after it became attached to and a part thereof.

The defendant Caulk, in his cross-petition, asked judgment for possession of and to quiet title to the property and for a reasonable attorney's fee.

Upon these issues, a jury being waived, trial was had to the court as between plaintiffs and defendant Caulk. No service was had on defendant Lloyd Reagan.

The record discloses that the defendant D. N. Caulk was in the real estate business as a developer of acreage tracts with an office at 611 Wright Building in Oklahoma City, Oklahoma; that one Lloyd Reagan, a shoe salesman in a shoe store in Oklahoma City, who had purchased one of defendant Caulk's acreages, offered to try to sell some of the tracts (acreage) for him during odd times at a stipulated commission (10%); that sometime prior to January 6, 1944, Reagan began negotiations with the plaintiffs, R. L. Bullard and S. C. Bullard, for the sale to them of the above described tract of land, and on the 6th day of January, 1944, Reagan presented to plaintiffs a written contract for deed, which was executed by R. L. and S. C. Bullard as buyers and D. N. Caulk as seller, by which Caulk agreed to sell and convey said lands to them upon the terms therein expressed.

The agreed price was $600 of which $25 was to be paid at time the contract was signed. The balance was to be paid in monthly installments of $20 on the 1st day of February, 1944, and $15 monthly on the 1st day of each month thereafter with 6% interest until the balance was paid.

The contract also provided:

"All payments to be made to D. N. Caulk at 611 Wright Building, Oklahoma City, Oklahoma, unless a written notice addressed to Buyer at address shown herein, shall be given Buyer of a change of payment place.

"Seller agrees to pay all taxes for the year 1943, and Buyer agrees to immediately pay when due or payable all taxes, liens, or encumbrances, against said premises during the life of this contract. Should the Buyer fail to pay any taxes, assessments, liens or encumbrances that he is required by this contract to pay before the same become delinquent, the Seller may at his option advance and pay the same and add the amount so paid to the balance due on the purchase price of said property and the Buyer agrees to repay the Seller the amount so advanced, together with interest at the rate of 8% per annum, from the date of such payment or advance, said repayment to be made by the Buyer within sixty days after the Seller may have advanced such funds.

"It is agreed that time is the essence of every provision of this contract.

"No verbal or other agreement, promise of warranty, statutory or otherwise, not expressed in this contract will be recognized or binding upon either Buyer or Seller. No agent of the Seller has any authority to waive, change or modify the terms of this contract. . ."

The contract was executed in duplicate on printed pass book form contracts, which were furnished by D. N. Caulk and which also contained provision for a record of all payments made. Reagan personally handled the closing of the deal and collected the down payment, and thereafter delivered one copy of the signed contract to plaintiffs and one copy of the signed contract to defendants.

The court specifically found that plaintiffs paid to the defendant Lloyd Reagan, before their default upon the contract sued upon, an aggregate sum of $150, which sum was remitted to the defendant, D. N. Caulk; that the defendant D. N. Caulk should reimburse the plaintiffs in said sum; that Lloyd Reagan was not the agent of the defendant D. N. Caulk for the purpose of receiving payments from the plaintiffs

over and above said $150; that the defendants had not complied in all particulars with their contract; that defendants are in default under the terms of the contract.

The court rendered judgment according to these specific findings and quieted title in defendant D. N. Caulk; and upon motion for a new trial being overruled, plaintiffs appeal.

Plaintiffs argue their assertions of error under one proposition, to wit:

"A principal, who entrusts his agent with authority to make a contract, and thereafter accepts benefits which is credited to such contract, and further fails to notify such undertaking contracting parties of his termination of such agent's ostensible authority, is liable for all damages as a consequence of any breach thereof."

There is no dispute as to the terms of the written contract, or that Reagan received $150 from plaintiffs and that this was received from Reagan by defendant Caulk and that he applied it on the contract principal and accrued interest, but it is denied by Caulk that Reagan was authorized to received any payments for him except the $25 down payment. He testified that it was customary for agents to receive the down payments on such transactions but nothing more; that Reagan was never authorized to act as his agent and that he was not his agent. However, he did admit that he received and accepted one or more payments on his and the plaintiffs' contract, and that his records showed a total payment of $150, but denied that he had continued to receive payments from Reagan on the contract over a period of four years in the total sum of the contract. He testified that he did not inform the plaintiffs when they paid the first payments on the contract to Reagan that Reagan was not authorized to accept them; and, he admitted that he never, at any time, instructed plaintiffs not to make any further payments to Reagan after the receipt of the several payments totaling $150 which they admittedly remitted through Reagan.

Plaintiffs had receipts from Reagan and testified that they had paid to Reagan not only the $150 credited to them by Caulk but that they had continued to pay Reagan each month from February 1, 1944, until October of 1947; that they had never been notified by defendant Caulk that he had not received all their payments until they demanded the warranty deed in October, 1947, after they allegedly had paid the contract price of $600, plus $75 interest, and drilled a well on the premises at a cost of $99.25 and spent $500 for leveling and preparing a building site.

In determining the issues in the case, we are governed by the rule that in a law action where trial by jury is waived, the finding and judgment of the trial court will not be disturbed on appeal because of the insufficiency of the evidence, if there is any evidence reasonably tending to support such finding and judgment. Truax v. Capitol Life Ins. Co., 166 Okla. 153, 26 P. 2d 755.

The plaintiffs contend htat they are entitled to have the cause reversed and judgment rendered for them. On the other hand, the defendant Caulk contends that the gist of the action concerns payments made by the plaintiffs to a spare-time real estate broker, with the intention that he would deliver such payments to defendant Caulk for plaintiffs but without the knowledge or authority of said defendant, and intended to apply as payments on purchase price of real estate being purchased from the defendant under contract for a deed, which provided that the payments were to be made to defendant at his place of business and from this situation these questions arise: Was the salesman the agent of the buyers for the purpose of delivering the money to the seller, or was he the agent of the seller for the purpose of collecting and receiving the contractual payments?

Obviously, Reagan was the authorized agent of seller to sell the property but authority as an agent to sell property does not of itself and alone apparently give to the agent authority to collect pay for the property so sold (Scarritt-Comstock Furn. Co. v. Hudspeth, 19 Okla. 429, 91 P. 843, 14 Ann. Cases 857), and, especially is this true where the written contract, as here, provides to whom, where and when the payments are to be made; and, where the record discloses that the payments were made by plaintiffs to Reagan, the alleged agent, in direct contravention of the terms of the written contract of sale.

Plaintiffs' allegation that Reagan was the agent of defendant Caulk is not supported by the record; and plaintiff's contentions of agency are without merit unless it can be said that the admitted acceptance of the down payment together with other payments on the principal and interest by Caulk from Reagan without repudiating the existence of agency, or his authority to collect future payments from plaintiffs, was such as to constitute the basis for an implied agency between Reagan and Caulk.

Plaintiffs plead and rely upon their allegations of an express agency but they argue that if there was not an express agency, there was an implied agency.

The defendant insists that any agency relationship that existed between him and Reagan was terminated with the signing of the contract; that plaintiffs may not rely upon express agency by pleadings and argument and, at the same time, contend alternatively, without so pleading, that there was an implied agency or agency by conduct.

The plaintiffs do not plead conduct of the parties and circumstances such as to constitute implied agency, but, on the contrary, plead an express appointment or designation of an agent and, this being true, plaintiffs were not entitled to introduce evidence of conduct or circumstances to prove an implied appointment. In the case of Liberty National Bank of Pawhuska v. Exendine, 156 Okla. 26, 11 P. 2d 154, we held that where an express agency is relied on in the pleadings, evidence of implied appointment or designation by acts, conduct and circumstances is inadmissible. Since the only part of the record that we may properly consider is that part of the evidence introduced by plaintiffs to sustain their allegations, and there being no evidence of agency other than acts of implied appointment by acceptance of the $150, admittedly collected from plaintiffs by Reagan and paid to defendant by him, the judgment, under the rule announced in Truax v. Capitol Ins. Co., supra, must be sustained.

Plaintiffs next contend that if their contentions of express or implied agency are untenable, there is yet the question of ratification of the action and conduct of Reagan by D. N. Caulk, contending that there would still be no doubt that there existed between them the relationship of principal and agent. Citing Drew v. Anderson, Clayton & Co., 120 Okla. 250, 252 P. 64, quoting therefrom as follows:

"In U. S. Fid. & Guar. Co. v. Shirk, 20 Okla. 576, 95 P. 218, the rule is stated that:

" 'One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own with all its burdens as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole.' "

In this connection, plaintiffs further contend that if they had failed to establish an express agency, then defendant's acts in entrusting the contract to his agent, Reagan, and accepting the benefits therefrom would constitute a ratification, and, in addition, the fact that defendant cross-petitioned for foreclosure in the instant case is specific ratification, citing Wolfe v. Shell Petroleum Co., 83 Fed. 2d 438, asserting that there can be no ratifica-

tion of a part of an authorized or unauthorized contract. Citing Lee v. Little, 81 Okla. 168, 197 P. 449, as authority. Continuing in their brief, they say:

"However, in the instant case, it is redundant to even argue the question of ratification when it was express agency in its very beginning."

In the Drew v. Anderson, etc., case, supra, in the opinion, it was said:

"Where agency and the scope thereof rest in a writing it is a question of law for the court (Central Mortgage Co. v. Michigan State Life Ins. Co., 43 Okla. 33, 143 P. 175), and when they rest both in writing and in parol, and the parol evidence corroborates the writing, it is still a question of law for the court (Stacy v. Browne, 99 Okla. 104, 219 P. 336). *But where agency and the scope thereof are to be determined from conflicting evidence they are questions of fact for the jury, or the court in the absence of a jury, and the finding thereon will not be disturbed on appeal where there is any evidence reasonably tending to support the same.*" (Emphasis ours.)

In the instant case, the only evidence of agency and scope of authority was parol.

In the Lee v. Little case, supra, in the syllabus, paragraph 3, it was said:

"Where one who is bound to pay money to another, instead of paying said money direct, or in accordance with the contract of the parties, pays the money to a bank for the other, he thereby makes the bank his own agent and makes such payment at his own risk, and in order to avoid liability it is necessary for him to show that the other received the money from the bank."

These rules do not support the contention of the plaintiffs, but rather are authorities sustaining defendant's theory.

The plaintiffs admittedly paid the money on the contract to Reagan to be paid to the defendant Caulk. They had not been instructed to or not to so do.

They had a copy of the contract which provided that the payments were to be made to Caulk at his office. They did not show that defendant Caulk ever received any money from Reagan other than the $150 which was credited to them. Thus, clearly invoking the rule in the Lee v. Little case, supra. Therefore, this contention is without merit.

The judgment is affirmed.

ARNOLD, C. J., HALLEY, V. C. J., and CORN, O'NEAL, and BINGAMAN, JJ., concur. WELCH, GIBSON, and DAVISON, JJ., dissent.