James W. MILLER, d/b/a A & A Construction Company, Plaintiff in Error,

v.

INDUSTRIAL WELDING AND SUPPLY COMPANY, a corporation, Defendant in Error.

No. 39834.

Supreme Court of Oklahoma.

May 12, 1964.

Norman & Wheeler, Chester Norman, Chal Wheeler, Muskogee, for plaintiff in error.

Bonds & Matthews, Tom R. Mason, A. Camp Bonds, Muskogee, for defendant in error.

WILLIAMS, Justice.

The question to be determined in this opinion is whether we should uphold the judgment of the trial court wherein it was determined that sub-contractor corporation which had certain welding done was entitled to be paid the contract price as against the claim that it did not finish the job.

Plaintiff in error, James W. Miller, d/b/a A & A Construction Company, hereinafter referred to as A & A, entered into a sub-contract with Ferguson for the installation of certain underground pipelines. About twenty per cent of the pipes installed were steel and were joined by welding. On February 19, 1958, A & A awarded a sub-contract in the amount of $4793.00 to Industrial Welding Company, hereinafter referred to as Industrial, for the doing of such welding.

On April 29, 1959, Industrial, as plaintiff, instituted the action from which this appeal arises. It alleged that the sum of $1,908.17 was the balance due under the contract; that it was required by A & A to "furnish work, labor and material over and beyond that required by said contract to the extent and in the amount of $2,920.22"; that in the course of the performance of said contract it was required by A & A to be delayed on said contract for which it is entitled to $4,870.80; that A & A rented certain equipment from it "to the extent and in the amount of $1,284.83"; that A & A "did, before and during the course of said contract, order and direct" Industrial "to furnish materials and labor, not a part of said contract, to the extent and in the amount of $161.88"; that A & A pur-chased from Industrial material, supplies and shop labor in the amount of $1,576.04. Plaintiff, Industrial, sought a judgment in the total amount of $12,721.94.

A & A for its answer pleaded a general denial, admitted the execution of the contract with Industrial and alleged that Industrial "defaulted on the same from and after September 17, 1958", and that it "was compelled to take over the completion of" Industrial's "contract and complete the same at great expense to it". A & A further admitted in its answer that Industrial furnished work, labor and materials over and beyond the terms of the contract in the amount of $1,319.80; and that it is indebted to Industrial in the sum of $1,284.83 for rental of equipment.

A & A filed a cross-petition alleging that Industrial wholly defaulted and abandoned its contract on or about September 17, 1958; that it was "forced to acquire, test, qualify and use other welders to complete" the contract; that it "actually paid out to welders the sum of $5,151.80 in order to complete the contract"; that it "was also forced to pay the Oklahoma Testing Laboratories the sum of $616.15 for their services in testing" such welders; that it "was compelled to pay the sum of $1,273.78 for a welding machine operator although" Industrial "was obligated to pay one-half of such amount"; that it "was also compelled to rent welding equipment" at a cost of $468.33; that it was forced to pay Ferguson "the sum of $598.60 for welding work done by that company, after default of" Industrial, which work was embraced in the contract but which Industrial failed to perform; that Industrial rented certain equipment from A & A amounting to $1,434.71, and that it was compelled to repair certain defective welds of Industrial at a cost to it of $296.00. A & A, defendant below, sought judgment in the total amount of $7291.01 less credits admittedly due plaintiff in the amount of $3487.08, or in the net amount of $3,803.93.

After a full and complete trial without a jury, the trial court decreed that plaintiff, Industrial, have and recover from defendant, A & A, as follows:

"On Plaintiff's First Cause of Action:

| | |
|---|---|
| Contract Price | $4,793.00 |
| For 'Extras' | 2,372.42 |
| For 'Delays' | 960.00 |

Total First Cause of Action $8,125.42.

| | |
|---|---|
| "On Plaintiff's Second Cause of Action [Equipment Rental] | $1,284.83 |
| "On Plaintiff's Third Cause of Action [Material and labor] | 161.88 |
| "On Plaintiff's Fourth Cause of Action [Supplies and shop labor furnished to A & A by Industrial] | 1576.04 |
| Grand Total – – – | $11,148.17 |

"Less The Following Items:

| | |
|---|---|
| "The Amount paid by Defendant on Contract | 2,851.53 |
| "One-Half of Welding Operators Wages – – | 636.89 |
| "Defective Welds – – | 296.00 |
| "10% Omission on Contract Price – – | 497.30 |
| "Rental of Equipment – – | 1,434.71 |
| "Total Deductions – – – | $5,698.43 |
| "Plaintiff's Net Recovery – – | $5,449.74" |

From such judgment and the overruling of its motion for a new trial, A & A appeals.

For reversal A & A advances only one proposition. It is that "The Findings of Fact, Conclusions of Law and the Judgment of the court based thereon are contrary to the Evidence and contrary to Law in that the trial court erred in failing to give the defendant Miller [A & A] credit for the sums of money expended over the contract price in finishing the contract he had with plaintiff [Industrial] after default of plaintiff thereon."

A & A maintains that Industrial "furnished no welders after September 17, 1958, although" A & A "project manager demanded they do so time after time", and that it "had a right to have this welding done for $4,793.00 as called for in" the contract with Industrial and is entitled to full credit for any sums of money expended in excess of the contract price in finishing the welding contracted by Industrial.

The evidence of Industrial tended to show that it had substantially performed its contract. The undisputed testimony was that Industrial had at least one welder on the job until September 18. Industrial's testimony was that it had at least two welders on the job until September 18. Mr. Wieck, one of the project managers for A & A, testified that at the time, September 18, Industrial quit furnishing welders that the project "was about 95 per cent" completed.

Mr. Miller, owner of A & A, testified that he and Mr. Lindsey, president of Industrial, had been close friends for a long time; that he never did call or write Mr. Lindsey to get additional welders on the job. Mr. Wieck testified that he did not advise Industrial that it needed to place additional welders on the job. Mr. George, another of A & A's project managers on the instant project, testified that he did not ask Mr. Lindsey for additional welders but did ask Mr. Gilstrap (a superintendent for Industrial on a job it had with Ferguson) several times for additional welders and did not receive them. Mr. Gilstrap denied ever having failed to fur-

nish welders upon a request from Mr. George.

The trial court found that Industrial "in good faith substantially performed its contract" with A & A.

■ We think that language used in the case of Jones v. Sibley, Okl., 360 P.2d 519, 521, is pertinent to the instant case. Therein we said:

"In the third paragraph of the syllabus to Bullard et al. v. Caulk, 206 Okl. 353, 243 P.2d 691, 692, this is said:

"'In a jury-waived law action, court's finding will not be disturbed because of insufficiency of evidence if any evidence reasonably tends to support the finding.' See also Roadway Express, Inc. v. Gordon, Okl., 277 P.2d 146.

"In Kansas, Oklahoma and Gulf Ry. Co. v. Searcy et al., 206 Okl. 1, 240 P.2d 440, this was said in the body of the opinion:

"'* * * The established rule is that, where a jury is waived, the trial court's findings are to be given the same force and effect as the verdict of a properly instructed jury. And, while we will review a judgment based on conflicting evidence, this is only for the purpose of ascertaining whether such judgment is supported by competent evidence, and not for the purpose of determining the weight thereof. * * *'"

■ For A & A to be entitled to reimbursement for the sums it allegedly spent in doing work Industrial contracted to do, Industrial must have been in default. As previously noted herein, the trial judge rather than finding that Industrial was in default, found that it had substantially performed its contract.

The contract provided that "that if said second party [Industrial] shall fail to prosecute said work or furnish said materials as required by A & A Construction Company * * * or shall fail to furnish material and complete said work on or about the date above set forth, then the second party agrees that first party [A & A] may deduct from amount due second party all damages to said first party for said delay, as determined by the architect and shall be properly charged to said second party and furthermore the A & A Construction Company, may on three day's written notice, if they choose (but not to be prejudicial in any manner), relet the said work, or any part thereof or purchase material. * * *"

There is no evidence in the record of any attempted compliance by A & A with such provision. The record reflects no determination by the architect nor the conveying of written notice to Industrial by A & A of effect that it considered Industrial in default and that welders would be hired and other expenses incurred in completing the project at Industrial's expense.

■ In the first paragraph of the syllabus in the case of Lane v. F. S. Miller Lumber Co., 101 Okl. 14, 222 P. 968, we held:

"A contractor, who has in good faith endeavored to perform all that is required of him by the terms of his contract for the construction of a building, and has in fact substantially performed the same, is ordinarily entitled to sue upon his contract and recover the contract price less proper deductions therefrom on account of omissions, deviations, and defects, chargeable to him, especially where the owner occupies and uses such building. Evidence tending to prove a substantial performance of the contract and a faithful endeavor on the part of the builder to perform all the terms of the contract is admissible."

After having reviewed the record, we find that the evidence reasonably tends to support the judgment of the trial court.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.