Irma E. SCHNEIDER, Appellant,

v.

Alphonse DeMERVILLE, Ella DeMerville, Charles Schmid and Robert C. Lister, Co-Executors of the Estate of Alphonse DeMerville, and Ella DeMerville, Charles Schmid and Robert C. Lister, Trustees Under the Will of Alphonse DeMerville, Respondents.

No. 51243.

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied and Opinion Modified on Court's Own Motion March 14, 1966.

Markus & Maue, Ralph L. Markus, Edgar J. McLaughlin, Lewis, Rice, Tucker, Allen & Chubb, J. L. Pierson, James A. Singer, Lovell W. George, Clayton, for appellant.

Stewart D. Flanagan, St. Louis, for respondents.

WELBORN, Commissioner.

Plaintiff-appellant Irma E. Schneider brought suit in the St. Louis County Circuit Court against Alphonse DeMerville for damages for fraud in the amount of $350,000, or in the alternative to compel the return to plaintiff of property acquired by DeMerville upon foreclosures of deeds of trust made by plaintiff. Upon the death of DeMerville, the coexecutors of his estate, Charles Schmid and Robert C. Lister, and the devisees under DeMerville's will of the property involved, his widow, Ella DeMerville, and trustees of a trust under the will were substituted as parties defendant. The lower court upon a trial found the issues for defendants and plaintiff appealed.

This litigation had its origin in an ill-fated venture of plaintiff in a real estate purchase. Plaintiff is a single woman with an eighth grade education and, in 1943, only minor experience in real estate matters. In March or April, 1943, plaintiff became interested in the possibility of purchasing at a partition sale four tracts of land in south St. Louis County, which had belonged to her grandmother. She discussed her idea with Mr. George Hunsche of Title Insurance Corporation of St. Louis. Hunsche suggested that she might obtain financing through DeMerville who operated a music store and, as something of a sideline, dealt extensively in lending money on security of deeds of trust. Plaintiff knew DeMerville slightly from having been in his music store. Plaintiff and DeMerville went out and examined the land which was in the vicinity of Telegraph Road. According to plaintiff she told DeMerville that she had plans to subdivide the property, along with other which she might purchase from an aunt. She told DeMerville that she planned to slice off 100' lots on one tract and sell them. DeMerville told her that this was a good idea and if she worked hard she could make "some real money." He told plaintiff that he would lend $25,000 on the tracts.

On June 26, 1943, DeMerville addressed to plaintiff and her father a loan commitment in which he agreed, for a 1% commission, to cause $20,000 to be deposited with the Title Insurance Corporation to be disbursed upon security of deeds of trust to be executed by plaintiff on two of the tracts of land. One tract of 18.412 acres on Telegraph Road (referred to herein as "Telegraph Road tract") was to be considered as security for a maximum of $12,000. The other, 38.536 acres on Cliff Cave Road (referred to herein as "Cliff Cave Road tract"), was to be considered as security for a maximum of $8,000. Buttressed by this financing arrangement, plaintiff purchased the two tracts plus two others at the partition sale on August 16, 1943, for $29,575.00. Her father, an heir of her grandmother, accepted a portion of the land in payment for his ⅕ interest. Plaintiff still needed $5,000 more to finance the purchase and, on August 17, 1943, DeMerville addressed to her and her father another loan commitment for $5,000, with a 1% commission to De Merville, to be secured by a deed of trust on a third tract of slightly less than three

acres at Yaeger and Telegraph Roads (referred to herein as "Yaeger Road tract").

On August 23, 1943, plaintiff executed three deeds of trust to Ralph Hunsche as trustee and John M. Dooly as party of the third part (Dooly, an employee of Title Insurance Corporation, was a straw party for DeMerville.) The first, on the Telegraph Road tract, was to secure an indebtedness of $12,000, due in three years with interest at 5%. The second, on the Yaeger Road tract, secured an indebtedness of $5,000 on the same terms. The third, on the Cliff Cave Road tract, secured an indebtedness of $8,000.

Plaintiff obtained options on other tracts in the vicinity with the idea of subdividing, but, with one exception mentioned below, she could not interest purchasers in her projects. She consulted surveyors about laying out 100′ lots on the Telegraph Road tract, but, according to plaintiff, DeMerville refused to go along with her proposal to sell such lots because there was no partial release clause in the deed of trust.

In 1944, plaintiff borrowed $5,000 more from DeMerville and a new deed of trust on the Cliff Cave Road tract was executed on March 3, 1944, to secure $13,000 indebtedness. She used a portion of this money to survey the Telegraph Road tract and to grade a tract of her father's adjacent to the Yaeger Road tract. The proceeds of loans from another party on the security of these lots were used to pay interest accruing on the notes of DeMerville. On February 7, 1946, plaintiff borrowed an additional $3500 from DeMerville on the security of a deed of trust on the fourth tract plaintiff had purchased on the partition, the 4.21-acre tract. As with the other loan, the term was three years and the interest 5%.

With no success in her efforts to sell her property to developers, plaintiff became delinquent in payment of the notes secured by the deeds of trust. Apparently plaintiff defaulted on the payment of the final interest note, due August 23, 1946, as well as the principal then due, on the Telegraph Road and Yaeger Road tracts. At that time she had paid a total of $2,125 in interest on these obligations. On the Cliff Cave tract, the default was in the payment of interest due September 3, 1946 and thereafter, as well as the principal due March 3, 1947. No payment, either of interest or principal, was made on the $3,500 indebtedness on the fourth tract.

On August 9, 1948, DeMerville purchased the properties upon sales under the deeds of trust, bidding the property in at public sale for the amount of the principal note secured by each deed of trust.

Within a short time thereafter, plaintiff began to search for persons who she thought were responsible for her misfortune. Apparently, she first directed her attention to the Title Insurance Corporation. On October 11, 1950, she wrote DeMerville, telling him "I got you into this mess and I'm trying every possible way to get you your money. * * *

"Demand your money plus interest and tell em unless I get my land back you'll join me in the suit I'M about to file." ("Em" referred to the Title Insurance Corporation. Plaintiff stated that she received $500 in settlement of a claim of unspecified nature which she advanced against Title Insurance Corporation.)

According to plaintiff, she first learned that DeMerville was responsible for her situation at a conference with Mr. George Hunsche on February 21, 1955, when he told her that it was DeMerville who had defrauded her. Plaintiff, pro se, filed an action against DeMerville in the St. Louis County Circuit Court on August 4, 1958 to have the foreclosures declared invalid "and to fix damages." Upon motion of defendant, plaintiff's amended petition was dismissed with prejudice on October 8, 1958. Plaintiff filed notice of appeal to the St. Louis Court of Appeals, which transferred the matter to this court. On

August 6, 1959, plaintiff dismissed that appeal.

The petition in the present case was filed December 10, 1959. After her original petition had been dismissed without prejudice on August 12, 1960, an amended petition was filed August 26, 1960.

The trial court upheld defendants' plea of the statute of limitations and also found that plaintiff had failed to prove the allegations of her petition. Without getting into the question of the statute of limitations, we agree that plaintiff failed to substantiate her charges of fraud and conspiracy.

Our de novo review which reaches this conclusion is not without difficulty. The major one is determining just what is the fraud which plaintiff insists was perpetrated upon her.

By her amended petition, after setting out the transactions involved, plaintiff alleged that she had no knowledge of the real estate business but relied upon the superior skill and knowledge of DeMerville and his agent, George Hunsche; that Hunsche told plaintiff that he was protecting her interests, but that he later told her that he was representing defendant throughout. Her express charge of fraud against defendant and Hunsche was: "Unknown to plaintiff certain liens of water district bonds applicable to said properties as created in Chapter 79 of the Revised Statutes of Missouri for the year 1939 prevented properties lying in the district, as were the properties of plaintiff, from being sold and refinanced until the liens of such special benefit assessment bonds ceased to exist or until legislative action offered relief to persons owning property in said district." Plaintiff alleged that defendant concealed the fact of his knowledge of said liens for the sole purpose of inducing plaintiff to execute the deeds of trust. The other specification of fraud was that defendant represented to plaintiff that he had obtained title insurance on the property and a certificate of title showing that the property was free and clear of liens; that such representations were false and fraudulent "because of the existence unknown to plaintiff * * * of said liens of water district bonds."

The petition further alleged that in furtherance of the design of DeMerville and Hunsche to defraud plaintiff, "the partial release clause, which is generally used for large tracts of land, was deliberately eliminated (from the deeds of trust) by the defendant."

Assuming, without deciding, that the petition contains sufficient allegations of fraud, proof was entirely lacking. Undoubtedly DeMerville was far more experienced than plaintiff in real estate matters. However, plaintiff was not dealing with defendant on a fiduciary basis. Insofar as appears, the dealings were at arm's length. Although plaintiff was not greatly experienced in real estate matters, she was not entirely inexperienced and she herself conceived the plan which ultimately led to the dealings with DeMerville. There is nothing to support a finding that plaintiff in any manner relied upon or had reason to rely upon DeMerville in the transactions. There was no showing of any awareness on his part of plaintiff's inexperience or of any fact which imposed a fiduciary duty upon DeMerville. Although plaintiff was referred to DeMerville by Hunsche, there is nothing to support plaintiff's charge against the latter of duplicitous dealings.

More important, evidence to support the basic charge of fraud by concealment of the water district bond liens is entirely lacking. Plaintiff read DeMerville's deposition in evidence. DeMerville stated that he heard nothing about any liens arising from the formation of the water supply district until plaintiff brought the matter up some five years after the foreclosures. Plaintiff herself testified to nothing relative to the alleged water district lien problem. She

stated that she contacted several prospective purchasers, but that, although there was no price problem, prospective purchasers were not interested. "They didn't give me any reason. They all seemed to be very evasive. I couldn't understand what it was, but there was a sales resistance there and I couldn't put my finger on it." However, according to plaintiff, one John Gross, a developer whom she contacted, did give her a reason.

Gross testified as witness for plaintiff. He testified that, in 1944, plaintiff tried to sell him the Telegraph Road tract, along with other acreage on which she had or hoped to obtain options. He testified that he was satisfied with her price of $150,000 for around 85 acres. He stated that two considerations caused him not to go through with the purchase. One was: "There were some unknown situations that I don't remember exactly all the details about, the water district, the water district bonds, against the property." Gross stated that the water district involved "an unknown amount of taxes" and that there was "an unsettled condition about it at the time * * *." "[I]t is a very difficult thing to explain, but it was a condition that we didn't like about the property." The ordinary tax of the district "wasn't bad, there was some—it was the involvement we could get into * * *."

Other than the record of the circuit court of the incorporation of the water supply district in 1941, there was no evidence on the subject.

Appellant does not contend that Gross's testimony established that there were bonds which constituted a lien, for here plaintiff takes the position that the mere creation of the district with power to issue general obligation bonds and to levy taxes upon property within the district for the payment "would be a serious handicap to development and sale of subdivision lots, particularly in the early years." Even conceding such to be a fact, such fact, taken with the evidence here, falls far short of establishing

any fraud on the part of DeMerville by concealment from plaintiff. In the first place, evidence is wholly lacking that DeMerville was aware of any problem by reason of the existence of the water district. Its creation was a matter of public record. Plaintiff was chargeable with knowledge of its creation. There is no basis whatsoever for the charge that DeMerville realized that the mere existence of the district would make it impossible for plaintiff to pay the deeds of trust and enable him to perpetrate his alleged scheme to obtain the property for himself.

The allegation about the fraudulent misrepresentation that the title certificate showed a clear title is equally unsubstantiated. To begin with, it is difficult to conceive that a lender of money on the security of a deed of trust could deceive the borrower by representing to him that the title was clear, when such is not the fact. A clear title is for the benefit of the lender. In any event, there was no evidence as to the content of any certificate of title which might have been obtained other than DeMerville's statement that the certificate showed a "clear" title, no evidence that the certificate of title showed anything about a lien for water district obligations and finally no evidence of any fraudulent concealment from plaintiff of the contents of a title certificate.

Although this disposes of the actual allegations of plaintiff's petition, we note briefly the different tack which plaintiff has attempted to take on this appeal. Plaintiff now contends that by virtue of the loan commitment of DeMerville for which plaintiff agreed to pay a 1% commission on the loans to DeMerville, DeMerville became her agent and a fiduciary relationship arose, with a resultant fiduciary duty which DeMerville violated, to disclose all material facts to plaintiff.

The mere fact that DeMerville was to receive a commission on the loans and that he undertook to "cause to be deposited" the

necessary funds cannot obscure the fact that DeMerville acted as a principal in making the loans and that plaintiff was well aware of that fact. The proposition that he became plaintiff's agent is entirely unsupported by law or evidence. See Swearingen v. Moore, 138 Okl. 24, 280 P. 295, 299.

His failure to disclose relates to a matter mentioned in the petition, but not actually asserted as a ground of fraud—the absence of partial released clauses in three of the four deeds of trust. Plaintiff endeavored to show that in St. Louis County subdivision development financing, provisions are included in deeds of trust for the release of the lien as to lots or parcels of the entire tract as the development proceeds. No partial release clauses were found in plaintiff's deeds of trust originally. When the indebtedness secured by the Cliff Cave Road tract was increased from $8,000 to $13,000, plaintiff, at the suggestion of an attorney for the Title Insurance Corporation, insisted upon the inclusion of a partial release clause, giving such right upon the payment of $350 per acre, which was done.

Plaintiff now contends that DeMerville knew that she wanted to subdivide the property, but that he deliberately omitted partial release clauses from the deeds of trust in order to make it impossible for plaintiff to develop and sell the land so that he might acquire it. Gross mentioned that the other consideration which prevented his purchase of property from plaintiff was the absence of a partial release clause in the deed of trust on the Telegraph Road tract.

Again, however, there is no basis for the assumption that DeMerville was under any sort of obligation to insert such a clause for the benefit of plaintiff. There is no evidence that plaintiff requested such a clause other than in the second Cliff Cave deed of trust and it was then inserted. The fact that there was no such clause in the other deeds of trust was apparent from the reading of them, which plaintiff had an opportunity to do. No one represented to her that such provisions were to be found in the instruments.

Apparently, plaintiff's position rests entirely upon the fact that she told DeMerville that she intended to divide the Telegraph Road tract into lots and sell them off and that by virtue of such knowledge, DeMerville, in his superior position, was obliged to assist her to that end by placing partial release provisions in the deeds of trust. However, the evidence as to the practice in St. Louis County with respect to partial release clauses was not so clear and convincing as to lead to the conclusion that the omission of such clause in the deeds of trust in question was part of a fraudulent design on the part of DeMerville. Evidence as to such practice insofar as unplatted land (the land in question had not been platted) was concerned was insubstantial, the evidence tending to show that, as a general practice, such clauses were limited to platted land or larger tracts of real estate. Evidence as to DeMerville's knowledge of the practice was absent. Certainly, even had he known of the practice, the matter would not have been so peculiarly within his knowledge as to call for him to expound it to plaintiff. Our conclusion that there was no fiduciary obligation is likewise applicable to the alleged concealment by DeMerville regarding this matter. In retrospect, it may now appear that it might have been to plaintiff's advantage to have such provision in the deeds of trust which she executed, but the evidence and inferences therefrom fall far short of proof of fraud upon her by DeMerville.

In any event, plaintiff's whole basic idea that DeMerville concocted a nefarious scheme to defraud her by omitting partial release clauses from the deeds of trust is simply without any evidentiary support. Furthermore, the entire idea is contrary to reason.

If, as plaintiff contends, DeMerville was so obsessed with the idea of obtaining the property for himself immediately upon viewing it that he struck upon the devious

scheme which plaintiff attributes to him, no explanation appears for the obvious conclusion that he could simply have declined to finance plaintiff and have bid for the property himself at the partition. The petition contains a vague allegation that De-Merville refrained from doing so "for fear of possible conflicts." No evidence was offered in support of this idea. DeMerville was asked on his deposition if in fact, although plaintiff showed him the properties, he wanted to acquire them for himself, but was afraid of "showing [his] hand for fearing * * * being involved as a trustee for another matter." DeMerville's reply was: "God knows I don't know anything about anything like that."

Again, in refutation of plaintiff's fundamental idea of the origin of the "fraud" upon her, when plaintiff fell into default on the deeds of trust, DeMerville did not rush in to foreclose them. She had been in default for almost two years before the trustee's sale under the deeds of trust. Such delay is wholly inconsistent with the essential basis of plaintiff's claim.

Giving plaintiff the benefit of a favorable ruling on all of the various objections to the evidence at trial which was not ruled upon by the trial court, plaintiff still falls short of the burden upon her to prove the fraud which she charged. Fraud is not presumed and must be proved. Although we recognize that fraud does not generally proclaim itself loudly, nevertheless the mere unsuccessful and unfortunate outcome of a business transaction is no basis for the conclusion that such result was produced by fraud upon the unsuccessful participant.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.